989 A.2d 883

**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Ernest WHOLAVER, Jr., Appellant.**

Supreme Court of Pennsylvania.

Argued May 13, 2008.

Decided Feb. 18, 2010.

Ari Daniel Weltzman, for Ernest Wholaver, Jr.

Edward Michael Marsico, Jr., Dauphin County District Attorney's Office, Amy Zapp, Francis Chardo, Harrisburg, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, JJ.

## *OPINION*

Justice EAKIN.

This is a direct appeal *nunc pro tunc* from the judgment of sentence for first degree murder, killing prosecution witnesses, conspiracy, reckless endangerment of another person, burglary, and criminal solicitation; appellant's direct appeal rights were reinstated *nunc pro tunc* after appellate counsel's

failure to file a timely Pa.R.A.P. 1925(b) statement resulted in waiver of issues appellant wished to raise when his appeal was initially filed. *See Commonwealth v. Wholaver,* 588 Pa. 218, 903 A.2d 1178, 1183–85 (2006). Finding no merit to appellant's claims, we affirm.

In July, 2002, appellant was charged with multiple sexual offenses involving his daughters, Victoria and Elizabeth. Victoria had a nine-month-old daughter, Madison, whose father was Francisco Ramos. Elizabeth was still a minor at the time the charges were filed. To protect Elizabeth, her mother, Jean, obtained a Protection From Abuse (PFA) order against appellant, evicting him from the family home in Middletown with no right to reenter it. Jean, Victoria, and Elizabeth testified at appellant's preliminary hearing. Trial on these charges was scheduled for January 13, 2003.

Shortly after midnight on December 24, 2002, appellant and his brother Scott drove from Cambria County, where he was living, to the house where his wife and daughters resided. While Scott waited in the car, appellant forcibly entered the home and fatally shot his wife and daughters, leaving his granddaughter, Madison, alive but unattended until the next day, when the bodies were discovered.

Following a search of the Wholaver home, appellant's person, and his vehicle, appellant was charged with three counts of first degree murder and related offenses; the prior pending charges were consolidated with the murder charges. Appellant filed a motion to suppress the physical evidence, as well as incriminating statements he made to fellow inmates, which was denied.

At the guilt phase of appellant's trial, the Commonwealth presented the testimony of co-defendant Scott Wholaver and several prisoner-witnesses, who related incriminating statements appellant made to them in prison, as well as evidence of appellant's efforts to hire a hit man to kill Francisco Ramos and fabricate evidence suggesting Ramos was responsible for the Wholaver murders. The Commonwealth also introduced the testimony of Victoria and Elizabeth from the preliminary

hearing on the sexual offenses under the forfeiture by wrong-doing exception to the hearsay rule, *see* Pa.R.E. 804(b)(6), on the theory they were killed to prevent their testimony at the trial for the sexual offenses. The jury convicted appellant of first degree murder and the related offenses, but acquitted him of the sexual offenses.

At the penalty phase, the Commonwealth pursued the aggravators at 42 Pa.C.S. § 9711(d)(6) (defendant committed killing while in perpetration of felony), (d)(7) (in commission of offense, defendant knowingly created grave risk of death to another person in addition to victim), (d)(11) (defendant has been convicted of another murder committed before or at time of offense at issue), and (d)(18) (at time of killing, defendant was subject to PFA restricting his behavior toward victim). The evidence from the guilt phase was incorporated into the penalty phase. Appellant pursued the mitigators at 42 Pa. C.S. § 9711(e)(1) (defendant has no significant history of prior criminal convictions) and (e)(8) (any other evidence of mitigation concerning defendant's character, record, and circumstances of offense). The jury found all of the aggravators, and some of the jurors accepted appellant's proffered mitigators; the jury returned three verdicts of death.[1]

On direct appeal, we concluded the evidence was sufficient to support appellant's first degree murder conviction, as well as the aggravating circumstances. *Wholaver*, at 1182–83. However, we held the other issues appellant wished to raise [2] were waived due to appellate counsel's failure to file a timely Pa.R.A.P. 1925(b) statement, despite being granted numerous

1. The underlying facts are set forth in greater detail in *Wholaver*, at 1180–81.

2. Appellant claimed the president judge erred by allocating insufficient funds or discretion to the defense to obtain experts and an investigator. *Wholaver*, at 1182. Appellant also claimed the trial court erred in: failing to sever the sexual charges from the murder; allowing the introduction of the victims' prior unsworn statements and preliminary hearing testimony from the sexual case; refusing to suppress evidence seized pursuant to allegedly defective warrants; failing to exclude Scott Wholaver's testimony; and refusing to permit introduction of appellant's purportedly exculpatory hearsay statement to Scott Wholaver under the excited utterance exception. *Id.*

continuances. *Id.,* at 1184 (quoting *Commonwealth v. Castillo,* 585 Pa. 395, 888 A.2d 775, 780 (2005) (reaffirming bright-line rule in *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306, 309 (1998), that any issues not raised in Rule 1925(b) statement are waived), and citing *Commonwealth v. Schofield,* 585 Pa. 389, 888 A.2d 771, 772 (2005) (applying *Lord's* strict waiver rule despite trial court's receipt of imperfect Rule 1925(b) statement and preparation of Rule 1925(a) opinion)). Accordingly, we affirmed the judgment of sentence.

Appellant filed a timely petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546, seeking reinstatement of his right to seek review on direct appeal *nunc pro tunc,* which the PCRA court granted. Appellant raises the following issues for review: [3]

1. Whether the president judge's placing limits on the funds available for hiring defense experts and investigators denied appellant qualified experts and an adequate investigation.

2. Whether the trial court erred in denying appellant's motion to suppress incriminating statements made to a fellow inmate.

3. Whether the trial court erred in denying appellant's motion to suppress evidence seized from the residence where the murders occurred.

4. Whether the trial court erred in denying appellant's motion to sever the sexual offense and solicitation to commit murder charges from the murder charges.

5. Whether the trial court erred in denying appellant's motion to dismiss pursuant to Pa.R.Crim.P. 600.

6. Whether the trial court violated appellant's right to a fair trial and impartial jury by excusing potential jurors for cause.

7. Whether the trial court erred in allowing the Commonwealth to introduce prior unsworn statements allegedly

---

**3.** Appellant's issues have been reworded and reordered for clarity and ease of discussion.

made by two of the victims, as well as their preliminary hearing testimony.

8. Whether the trial court erred in not instructing the jury regarding the limited admissibility of the sexual offense evidence.

9. Whether the trial court erred in denying appellant's motion *in limine* to exclude co-defendant Scott Wholaver's testimony on the grounds it lacked a factual basis and was the product of an illegal plea agreement.

10. Whether the trial court erred in ruling appellant's hearsay statement to co-defendant Scott Wholaver was inadmissible under the present sense impression or excited utterance exceptions to the hearsay rule.

11. Whether the prosecutor engaged in misconduct in misrepresenting commutation statistics, leading appellant to withdraw his request for an instruction pursuant to *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994).

12. Whether the prosecutor engaged in misconduct during closing argument to the jury at the penalty phase.

13. Whether the trial court's penalty phase jury instructions violated appellant's rights under the Eighth and Fourteenth Amendments to the United States Constitution, Article I, §§ 1, 9 of the Pennsylvania Constitution, and the Sentencing Code.

14. Whether the trial court erred by allowing trial spectators to wear buttons displaying the victims' images.

15. Whether the trial court erred in incorporating evidence of the condition in which appellant's granddaughter was found at the crime scene into the penalty phase for the limited purpose of establishing the time of death.

### *Waiver*

The Commonwealth asserts that issues 6, 8, 11, portions of issue 12, and issues 13 and 14 are waived because defense counsel failed to make timely objections or otherwise preserve the claims. To the extent appellant argues counsel's ineffec-

tiveness for failing to preserve these issues, the Commonwealth argues *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726, 737 (2002) (holding review of ineffectiveness claims should be deferred until collateral review) holds such claims should not be reviewed on direct appeal.

In issue 6, appellant contends the trial court violated his right to a fair trial and impartial jury by excusing for cause a venireman who expressed conscientious or religious objections to the death penalty, without any record proof or finding this potential juror would be substantially impaired in performing his duties. Following the venireman's statement that he could not impose the death penalty under any circumstances because of his religious beliefs, the prosecutor moved to excuse him for cause, and defense counsel did not object— understandably, because the potential juror had just stated he would not be able to follow the law. *See* N.T. Voir Dire, 6/1/04, at 149. As no objection was posed, this issue was not preserved and is waived. *See* Pa.R.A.P. 302(a) (issues not raised in lower court are waived and cannot be raised for first time on appeal); *Commonwealth v. Piper*, 458 Pa. 307, 328 A.2d 845, 847 (1974).

In issue 8, appellant argues the jury should have been contemporaneously instructed the evidence concerning the sexual offenses involving his daughters was admissible for the limited purpose of showing motive for the murders. However, although trial counsel objected to the admission of this evidence, he did not request a limiting instruction; therefore, the issue of trial court error for not giving such instruction is waived. *See Commonwealth v. Bryant*, 579 Pa. 119, 855 A.2d 726, 739 (2004) (failure to request cautionary instruction upon introduction of evidence constitutes waiver of claim of trial court error in failing to issue cautionary instruction).

In issue 11, appellant claims the prosecutor engaged in misconduct by informing the trial court that, within the last several years, there was one commutation of an inmate's life sentence to a term of years. *See* N.T. Trial, 8/23–31/04, Vol. III, at 1217. Based on this information, defense counsel chose

to forego requesting an instruction pursuant to *Simmons* that "life means life" without the possibility of parole. *See id.,* at 1218–19. Appellant argues the prosecutor neglected to mention the inmate whose life sentence was commuted was convicted of second degree murder, not first, and that no life sentence imposed on a defendant in a capital case was ever commuted; this, he claims, constituted misconduct. However, there is no factual finding that the prosecutor did so, and the import of such a statement is not before us; defense counsel voluntarily withdrew the request for a *Simmons* instruction and posed no objection to the instruction given, so this issue is waived. Pa.R.A.P. 302(a).

In issue 12, appellant raises four claims of prosecutorial misconduct during the penalty phase closing argument. He contends the prosecutor improperly argued non-statutory aggravators, such as killing one's family and soliciting murder, trumped the mitigators at § 9711(e)(1) (no significant history of prior criminal convictions) and (e)(8) ("catch all" mitigator), and that § 9711(d)(11)'s aggravator (defendant convicted of another murder before or at time of offense at issue) counted in triplicate because appellant killed three people. As the only objection defense counsel raised was that killing one's family was not a statutory aggravator,[4] *see* N.T. Trial, 8/23–31/04, Vol. III, at 1228–29, the remaining claims concerning assertion of non-statutory aggravators are waived.

Appellant also contends the prosecutor improperly argued in support of an aggravator by presenting inconsistent theories in support of § 9711(d)(7)'s aggravator (grave risk of death to another besides victim).[5] He further claims the prosecutor improperly rebutted § 9711(e)(1) and (e)(8)'s mitigators by arguing the circumstances of the offense "trumped"

---

4. The merits of this issue are addressed in the penalty phase portion of this opinion.

5. The Commonwealth contended because Madison Wholaver could not crawl and was found near her mother, she was at risk of being struck by a bullet when her mother was shot; in the alternative, the Commonwealth contended she could have fallen down the stairs, ingested cleaning substances in the bathroom, or drowned in the toilet when she was left alone for an entire day.

them, and by arguing appellant's character, record, and the circumstances of the offense were not mitigators. As no objection was made to preserve any of these issues, they are waived. Pa.R.A.P. 302(a).

█ Finally, appellant contends the prosecutor improperly argued victim impact evidence should be considered a "super-aggravator" that trumped all mitigators. Defense counsel objected, but not on the grounds appellant argues in his brief. Counsel did not object to the prosecutor's argument that evidence of the murders' effect on Madison Wholaver trumped the mitigators; instead, counsel argued there was no evidence any of the remaining family members would tell Madison her grandfather killed her grandmother, mother, and aunt, and thus the future effect on her was questionable. *See* N.T. Trial, 8/23–31/04, Vol. III, at 1230. Accordingly, the issue raised is waived. Pa.R.A.P. 302(a).

█ In issue 13, appellant argues the trial court improperly instructed the jury at the penalty phase by: failing to give a *Simmons* instruction; failing to appropriately define aggravating and mitigating circumstances and the weighing process; failing to properly instruct on the use of victim impact statements; and telling the jury to consider non-statutory aggravating factors such as future dangerousness. As defense counsel indicated he had no objections to the instructions, *see* N.T. Trial, 8/23–31/04, Vol. III, at 1242, this issue is waived. *See* Pa.R.Crim.P. 647(B) (no portions of charge or omissions therefrom may be assigned as error unless specific objections are made before jury retires to deliberate); Pa.R.A.P. 302(a).

█ In issue 14, appellant contends the trial court violated his constitutional rights by not holding a hearing when a Commonwealth witness and several spectators were wearing buttons displaying the victims' photos; appellant asserts a hearing was required to evaluate the nature and extent of the display. No hearing was requested; defense counsel instead asked the court to require the witness to remove the button before testifying, and the trial court granted this request. N.T. Trial, 8/23–31/04, Vol. II, at 752–53. Thus, the issue of

whether a hearing should have been held is waived. Pa.R.A.P. 302(a).

■ Appellant argues defense counsel was ineffective for failing to preserve all the above issues by objecting; however, the Commonwealth correctly asserts these ineffectiveness claims should be deferred until collateral review, pursuant to *Grant.* Accordingly, we will not review them on direct appeal.

### Pre–Trial

■ Appellant claims the president judge denied him the tools for an adequate defense by limiting the funds given to him to retain qualified, independent experts; he argues the court's actions violated his rights to due process, to present a defense, to have competent counsel, and to confront his accusers, necessitating a new trial.

After being granted *in forma pauperis* status prior to trial, appellant petitioned the trial court for the appointment and payment of experts in ballistics, pathology, psychiatry, and serology, plus a private investigator. Appellant averred the experts were necessary

> to analyze evidence which the Defendant believes will be introduced as part of the Commonwealth's case in chief; to allow for the constitutionally adequate cross-examination of Commonwealth's experts; to explore the existence of exculpatory evidence; [and] to guide the defense generally in the scientific and forensic aspects of the case.

Trial Court Opinion, 5/28/04, at 3 (quoting Petition for the Approval of Expert Witness Appointment of Expenses, 4/16/04, at ¶ 9). Appellant further averred the psychiatric expert was constitutionally required, as a mitigation expert. *Id.* (quoting Petition for the Approval of Expert Witness Appointment of Expenses, 4/16/04, at ¶ 10). Appellant requested $3,500 for a ballistics expert, $2,500 for a pathologist, $350 per hour for a medical examiner, $4,000 for a psychiatrist, $1,250 for a serologist, and $12,500 for a private investigator.

The president judge ruled on the petition, appointing ballistics and pathology experts, but reducing the funded amounts to $1,750 and $2,000, respectively. The judge appointed a different private investigator than appellant requested, and funded 49 hours at $50 an hour; instead of the requested psychiatrist, the judge appointed a psychologist, and funded six hours at $100 an hour.

Appellant contends the psychologist was not qualified to assist with competency issues, mental health defenses in the guilt phase, and penalty phase mitigation; he further claims the psychologist and private investigator were not independent because they were selected by the court and thus "beholden" to it. Appellant's Brief, at 20. Appellant also asserts the amount of funds allocated to his experts was "grossly mismatched" compared with the Commonwealth's resources and quality of experts, and was inadequate for them to perform their services effectively. *Id.*, at 22.

Appointment of expert witnesses and the provision of public funds to hire them to assist in the defense against criminal charges are decisions within the trial court's sound discretion and will not be reversed absent an abuse thereof. *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 707 (1998); *Commonwealth v. Carter*, 537 Pa. 233, 643 A.2d 61, 73 (1994). Although the Commonwealth is not obligated to pay for an expert's services, a capital defendant is entitled to the assistance of experts necessary to prepare a defense. *Id.*

Appellant relies on *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), which held:

[W]hen a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. This is not to say, of course, that the indigent defendant has a constitutional right

to choose a psychiatrist of his personal liking or to receive funds to hire his own.

*Id.*, at 83, 105 S.Ct. 1087.

Here, appellant made no showing his mental condition was in question; he had not filed notices of insanity or mental infirmity defenses, nor was his competency to stand trial at issue. *See* Trial Court Opinion, 9/11/07, at 26. This contrasts sharply with *Ake*, where the defendant behaved so bizarrely at arraignment that the trial court, *sua sponte*, ordered him to have a psychiatric examination, but he was subsequently denied a psychiatrist to assist with his insanity defense. *Ake*, at 71–72, 105 S.Ct. 1087. In *Commonwealth v. Fisher*, 572 Pa. 105, 813 A.2d 761 (2002), we held, based on *Ake*, indigent defendants are entitled to funding for psychiatric experts only in the very limited circumstance where the defendant's sanity at the time of the offense is a significant issue at trial. *Id.*, at 765; *see also Commonwealth v. Serge*, 586 Pa. 671, 896 A.2d 1170, 1184–85 (2006). Here, appellant's sanity was not at issue.

Furthermore, the Commonwealth's answer to his petition for appointment of experts stated it had no intention of presenting psychiatric testimony regarding future dangerousness unless appellant raised the issue. *See* Trial Court Opinion, 5/28/04, at 6 (citing *Commonwealth v. Miller*, 560 Pa. 500, 746 A.2d 592, 600 (2000) (holding capital defendant entitled to state-paid psychiatric assistance only where needed to rebut prosecution's assertion of future dangerousness, not to prove mitigating circumstances)).[6] The trial court noted its order did not preclude appointment of a psychiatrist, should the psychological evaluation reveal the need for one. Trial Court Opinion, 5/28/04, at 6. As appellant demonstrated no manifest

6. While the United States Supreme Court and this Court have since held "capital counsel has an obligation to pursue all reasonable avenues for developing mitigating evidence[,]" *see Commonwealth v. Williams*, 597 Pa. 109, 950 A.2d 294, 303 (2008) (citing *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), and *Williams v. Taylor*, 529 U.S. 362, 396, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)), nothing in these decisions requires the defendant be afforded a psychiatrist as opposed to a psychologist, and appellant does not challenge counsel's stewardship in investigation of mitigating evidence.

need for a psychiatrist, the trial court did not abuse its discretion in appointing a psychologist.

Regarding the private investigator, appellant did not specify his investigative needs to the trial court; accordingly, the court allocated money to pay for 40 hours, with the understanding that if appellant later demonstrated the investigator needed more time, the court would consider such request. *Id.* In *Commonwealth v. Bardo*, 551 Pa. 140, 709 A.2d 871 (1998), we held, again based on *Ake*, a defendant does not have an absolute right to a court-appointed investigator, and appointment of an investigator is vested in the trial court's discretion. *Id.*, at 875. We perceive no abuse of discretion in the funding allocated in this case.

 Finally, appellant's assertions that he was entitled to the same amount of time and resources as the Commonwealth, and that the experts were not independent because they were chosen by the court, are meritless. As previously noted, appellant made no showing he needed additional time or investigation to prepare his defense. There is no obligation for the court to provide experts in every area where the Commonwealth will present expert testimony or to pay a defendant's experts commensurately. Furthermore, an indigent defendant does not have the right to choose his own expert or receive funds to hire his own. *See Ake*, at 83, 105 S.Ct. 1087. Appellant asked for experts and was given them by the trial court; the fact they were not the ones he would have chosen does not render them less effective or independent in their evaluation. What was required of the trial court was to provide the assistance of experts necessary to prepare a defense; the court was not obligated to issue a blank check for this. As we perceive no abuse of discretion, appellant's claims are unavailing.

 Appellant next claims the trial court erred in denying his suppression motion, because his right to counsel under the Fifth [7] and Sixth Amendments to the United States Constitu-

7. Although appellant's statement of the issue references the Fifth Amendment, his argument only pertains to the Sixth Amendment;

tion and Article 1, §§ 8 and 9 of the Pennsylvania Constitution was violated when he was questioned by inmates acting as state agents, without being given notice or the opportunity to invoke his rights to counsel and to remain silent. Specifically, appellant cites the testimony of fellow inmate James Meddings, which was used to support appellant's conviction for solicitation to commit murder.

While appellant was in county jail awaiting trial, he met Meddings and admitted he was at his wife's home on the night of the murders, looking in the window from outside. Appellant claimed he heard a noise and ran to avoid setting off the motion sensor light; when he came back to where he initially stood, he saw his wife's body lying on the kitchen floor, and when he went inside, he discovered his daughters' bodies upstairs. Eventually, appellant asked Meddings to hire a hit man to kill Francisco Ramos, the father of Victoria's daughter Madison, and make it look like suicide, leaving a note saying he, not appellant, had murdered appellant's family.

Meddings went to the police and agreed to work with them, giving them a taped statement regarding what appellant asked of him and updating them on further conversations with appellant concerning the murder for hire. In cooperation with police, Meddings gave appellant the contact information for an undercover agent posing as a hit man. Appellant argues Meddings was acting as a government agent who engaged in deliberate elicitation of incriminating information from him while he was in custody; therefore, he was entitled to counsel, and any statements he made without counsel present should have been suppressed.

 "In reviewing a ruling on a suppression motion, the standard of review is whether the factual findings and legal conclusions drawn therefrom are supported by the evidence." *Commonwealth v. Bronshtein*, 547 Pa. 460, 691 A.2d

therefore, we will address his claim only in context of the Sixth Amendment. *See* Appellant's Brief, at 29–32. Furthermore, although appellant references various inmates, his argument focuses solely on James Meddings; therefore, we will only examine Meddings' role in the investigation. *See id.*

907, 913 (1997) (citation omitted). Additionally, the reviewing court may consider only the evidence presented for the defense and that of the prosecution which remains uncontradicted when read in the context of the entire record. *Commonwealth v. Robinson*, 518 Pa. 156, 541 A.2d 1387, 1389 (1988).

It is well settled in Pennsylvania that the Sixth Amendment right to counsel is offense-specific. *See Bronshtein*, at 914. Once invoked regarding a particular offense, the right does not extend to all future investigations because:

> The police have an interest ... in investigating new or additional crimes [after an individual is formally charged with one crime.] To exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel has not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in investigation of criminal activities.

*Id.* (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175–76, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)) (ellipses and brackets in original; citations omitted). Under the federal constitution, the right "attaches only at or after the initiation of adversary proceedings against the defendant." *United States v. Gouveia*, 467 U.S. 180, 187, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). The right to counsel under the Pennsylvania Constitution "is coterminous with the Sixth Amendment right to counsel for purposes of determining when the right attaches." *Commonwealth v. Arroyo*, 555 Pa. 125, 723 A.2d 162, 170 (1999). Thus, the right generally attaches at arraignment. *Commonwealth v. Gwynn*, 596 Pa. 398, 943 A.2d 940, 948 (2008).

Appellant's statement to Meddings concerned only his intent to solicit Ramos' murder; it was not used to prove the sexual offenses or Wholaver murders—the only crimes for which appellant was in custody. Thus, questioning appellant about soliciting the murder, a crime for which he was not arrested or arraigned, was permissible. Meddings was not initially placed in the cell block with appellant to obtain

information; appellant voluntarily sought Meddings out to inquire about a hit man. As the learned trial court observed:

The subjective belief of Meddings may have been to procure himself a deal or to receive leniency in his sentence. Whatever Meddings' subjective beliefs, however, the Commonwealth only became involved after [appellant] attempted to solicit Meddings to murder [Ramos]. The Commonwealth made no promises to Meddings in return for the information he provided, nor did the Commonwealth suggest that it might be in Meddings' best interests to continue his interactions with [appellant]. It was a voluntary decision by [appellant] to solicit Meddings and it was a voluntary decision by Meddings to inform the Commonwealth that [appellant] was trying to solicit him to commit a murder. It is clear, therefore, that Meddings was not a Commonwealth agent. Additionally, the Commonwealth made it clear that Meddings was not to discuss the murder of [appellant's] wife and daughters or any other charges pending at that time.

Trial Court Opinion, 4/21/04, at 12. As the trial court's conclusion is supported by the record, *see* N.T. Trial, 8/23–31/04, Vol. II, at 665–67, 673, 676–77, appellant's claim fails.

■ In his next issue, appellant claims the trial court erred in denying his motion to suppress the evidence seized from the Wholaver residence following the murders. He argues that he and his wife owned the property as tenants by the entireties, and her share passed to him when she died, giving him a privacy interest in the residence. He also contends the search warrant lacked particularity and was overbroad, and that it violated Pa.R.Crim.P. 205(4)(a)[8] because it lacked a specific duration.

The trial court held the PFA order against appellant, which evicted him from the Wholaver home with no privilege of entry, remained in effect following the Wholaver deaths; being legally barred from the residence, appellant had no rea-

8. The Rule provides: "Each search warrant shall ... direct that the search be executed either ... within a specified period of time, not to exceed 2 days from the time of issuance...." Pa.R.Crim.P. 205(4)(a).

sonable expectation of privacy therein. *See* Trial Court Opinion, 4/21/04, at 2–5. Further, even if appellant retained a privacy interest in the residence, he was not entitled to suppression of the evidence because the warrant was not overbroad; it incorporated by reference the supporting affidavit of probable cause, which contained the requisite degree of specificity. *See* Pa.R.Crim.P. 205(2)-(3) (warrant shall specifically identify property to be seized, and describe with particularity person or place to be searched); *Commonwealth v. Rega*, 593 Pa. 659, 933 A.2d 997, 1012 (2007) (where items to be seized are as precisely identified as nature of activity permits, searching officer is only required to describe general class of item he seeks).

The warrant's lack of date, a technical defect, does not require suppression:

A rule of exclusion is properly employed where the objection goes to the question of the reliability of the challenged evidence ... or reflects intolerable government conduct which is widespread and cannot otherwise be controlled.... *[T]he imposition of a sanction requiring the exclusion of evidence that results from a search where there has not been compliance with the rule must depend upon the relationship of the violation to the reliability of the evidence seized.*

*Commonwealth v. Mason*, 507 Pa. 396, 490 A.2d 421, 424 (1985) (emphasis in original) (quoting *Commonwealth v. Musi*, 486 Pa. 102, 404 A.2d 378, 384–85 (1979)); *see also Commonwealth v. Rucci*, 543 Pa. 261, 670 A.2d 1129, 1137 (1996) (only where violation of Rules concerning search and seizure implicates fundamental, constitutional concerns, is conducted in bad faith, or has substantially prejudiced defendant will exclusion be appropriate remedy). Appellant does not allege the reliability of the evidence seized from the home was compromised because the warrant was stale; he fails to even argue how this technical defect resulted in an unconstitutional seizure. Accordingly, this claim fails.

 Appellant next claims the trial court erred in denying his motion to sever the sexual offense and solicitation charges from the murder charges for trial; he argues the prejudicial impact of allowing the jury to hear about the sexual offense and solicitation charges during the murder trial outweighed the probative value of such evidence, and the jury was incapable of separating evidence of the individual offenses.

 Whether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to the defendant. *Commonwealth v. Newman,* 528 Pa. 393, 598 A.2d 275, 277 (1991). The Rules of Criminal Procedure provide:

Joinder—Trial of Separate Indictments of Informations

(A) Standards

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1)(a)-(b).

The trial court held the evidence of the sexual offense and solicitation of murder offense was admissible at appellant's murder trial under Pa.R.E. 404(b), which provides evidence of other crimes, wrongs, or acts is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See id.,* 404(b)(2); *see also Commonwealth v. Lark,* 518 Pa. 290, 543 A.2d 491, 496–97 (1988). Such evidence is only admissible upon a showing its probative value outweighs its potential for prejudice. Pa.R.E. 404(b)(3).

Evidence of the sexual charges was relevant to show appellant's motive for the murders; his family was going to testify

against him regarding these charges the month after the murders. Preventing this damning testimony, which could have resulted in appellant's conviction and incarceration, was ample motive. Furthermore, the pending murder charges were relevant to establish appellant's motive for soliciting the murder of Ramos: implicating someone else as the killer, so as to escape trial and punishment for the murders. Finally, the murder charges were relevant to establishing appellant's consciousness of guilt regarding the sexual charges. *See Commonwealth v. Jones*, 540 Pa. 442, 658 A.2d 746, 748 (1995).

Thus, the sexual offense, solicitation of murder, and murder charges would all be admissible in separate trials for each other. There was no danger of jury confusion because the charges "flow in a linear manner as opposed to being dependent on one another...." Trial Court Opinion, 4/21/04, at 17; *see* Pa.R.Crim.P. 582(A)(1)(a). Furthermore, because the charges all flowed from the same events and were part of the same story, joinder for trial was appropriate. *See id.,* 582(A)(1)(b); *Commonwealth v. Paddy*, 569 Pa. 47, 800 A.2d 294, 308 (2002) (evidence of other crime admissible where it is part of chain or sequence of events which became part of theory of case and formed part of natural development of facts). We find no abuse of discretion by the trial court.

▪▪▪ Appellant next claims the trial court erred in denying his motion to dismiss pursuant to Pa.R.Crim.P. 600. His entire argument consists of four sentences:

Appellant was not brought to trial within 365 days of the filing of the criminal complaints against him. The criminal complaint for the sexual assaults was filed in July 2002, and the criminal complaint for the homicides was filed January 13, 2003. Appellant was brought to trial on August 23, 2004. That is 216 days over the allowed 365 days from the homicide charges.

Appellant's Brief, at 36.

▪▪▪ Rule 600(A)(3) provides trial in a court case where a written complaint is filed against the defendant who is at liberty on bail must commence no later than 365 days from

when the complaint is filed. Certain periods are excludable from computation of the period for commencement of trial, including delay resulting from the unavailability of the defendant or his attorney, or any continuance granted at the request of the defendant and his attorney. Pa.R.Crim.P. 600(C)(3)(a)-(b). If the court determines the Commonwealth exercised due diligence, and the circumstances occasioning the postponement were beyond the Commonwealth's control, the motion to dismiss on speedy trial grounds shall be denied. *Id.*, 600(G). In evaluating speedy trial issues, our standard of review is whether the trial court abused its discretion, and our scope of review is limited to the trial court's findings and the evidence on the record, viewed in the light most favorable to the prevailing party. *Commonwealth v. Meadius*, 582 Pa. 174, 870 A.2d 802, 805 (2005).

The trial court noted appellant was found not guilty of the sexual offenses; therefore, the date these charges were filed is irrelevant to appellant's Rule 600 claim. Trial Court Opinion, 9/11/07, at 40. Regarding the murder and solicitation to commit murder charges, which were filed January 13 and May 1, 2003, respectively, the trial court noted the defense filed several pre-trial motions and motions for extensions and continuances,[9] but "neither [appellant] nor the Commonwealth were dilatory in moving this matter forward toward a speedy trial." *Id.*, at 41. Appellant offers no argument regarding why certain times should not be excluded from the commencement period for trial, nor does he assert the Commonwealth failed to exercise due diligence. As the record, viewed in the light most favorable to the Commonwealth, supports the trial court's determination that appellant's speedy trial rights were not violated, we find no abuse of discretion.

9. The defense filed: a pre-trial motion requesting change of venire, additional time to file pre-trial motions, and severance of the charges June 9, 2003; an application for leave to file a petition for writ of mandamus with this Court September 4, 2003, seeking to enforce the order granting change of venire; a motion for continuance of a pre-trial hearing November 6, 2003; a request for extension of time to file briefs January 7, 2004; and a motion for continuance April 28, 2004. *See* Trial Court Opinion, 9/11/07, at 40.

### Guilt Phase

 Appellant's three guilt phase issues challenge the trial court's evidentiary rulings. Our standard of review is well settled. "[E]videntiary questions are controlled by the discretion of the trial court and will not be reversed absent a clear abuse of that discretion." *Commonwealth v. Jones*, 590 Pa. 202, 912 A.2d 268, 281 (2006) (citation omitted).

 Appellant claims the trial court violated his confrontation rights under the state and federal constitutions [10] by permitting the Commonwealth to introduce prior unsworn statements of his wife and daughters, as well as his daughters' preliminary hearing testimony regarding the sexual charges.

The Commonwealth filed a motion *in limine* seeking to admit these statements and preliminary hearing testimony under the "forfeiture by wrongdoing" hearsay exception of Pa.R.E. 804(b)(6).[11] Appellant objected, arguing they were inadmissible under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), which held testimonial statements by witnesses who are absent from trial are barred under the Confrontation Clause of the Sixth Amendment, unless the witnesses are unavailable and the defendant had a prior opportunity to cross-examine them. *Id.*, at 68, 124 S.Ct. 1354. The trial court deferred ruling on the issue until trial, when there would be sufficient evidence on the record to determine whether the Commonwealth met its burden of establishing by a preponderance of evidence that appellant might have engaged in wrongdoing, *i.e.*, killing the witnesses, to prevent their testifying against him. *See* Trial Court Opinion, 4/21/04, at 24. The court noted if the Commonwealth met its burden, any Confrontation Clause concerns would be absent, as the forfeiture by wrongdoing exception applied not only to the hearsay rule, but also to the Confrontation Clause.

10. *See* U.S. Const. amend. VI; Pa. Const. art. I, §§ 1, 9.

11. Rule 804(b)(6) provides a statement offered against a party who engaged "in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness" is not excluded by the hearsay rule. *See* Pa.R.E. 804(b)(6).

*Id.*, at 26–27 (citing *Reynolds v. United States*, 98 U.S. 145, 158, 25 L.Ed. 244 (1878)).[12]

At trial, appellant renewed his objection, arguing *Crawford* barred the statements' admission.[13] The trial court overruled

**12.** In *Giles v. California*, 554 U.S. 353, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008), the United States Supreme Court held a defendant does not forfeit his right to confront a witness simply by committing a wrongful act which renders the witness unavailable to testify at trial, which was all the California Supreme Court held was necessary for admission of the witness's statements. The Supreme Court noted under *Crawford*, the Confrontation Clause refers to the right of confrontation at common law, "admitting only those exceptions established at the time of the founding." *Giles*, at 2682. Since common law "permitted the introduction of statements of a witness who was 'detained' or 'kept away' by the 'means or procurement' of the defendant[,]" *id.*, at 2683, the Court held a defendant only forfeits his confrontation right by wrongdoing where the wrongful act was committed for the purpose of preventing the witness's trial testimony. *Id.*, at 2687–91. The forfeiture by wrongdoing exception in Pa.R.E. 804(b)(6) contains this intent requirement, as does the federal version of the Rule. *Id.*, at 2688 n. 2.

**13.** The Commonwealth initially indicated it wished to use this evidence not as proof of the murders, but as proof of the sexual offenses, and argued the evidence would nonetheless be admissible to show appellant's motive for the murders under *Paddy*. N.T. Trial, 8/27–31/04, Vol. II, at 744–45, 747. The defendant in *Paddy* was charged with killing the victim to prevent her from testifying he shot two men in a prior incident. We held the victim's police statement that the defendant was the shooter, and she was afraid of him because he knew she saw him, was admissible for the limited purpose of revealing the victim's and the defendant's states of mind and the defendant's motive. *Paddy*, at 309–10. Although the trial court held the victim's statement was not hearsay under the forfeiture by wrongdoing exception, we noted

[I]t remains to be decided whether, under Pa.R.E. 804(b)(6), the absent witness's testimony shall be admitted only as evidence pertaining to the events about which the witness would have testified if he or she had not been prevented from doing so, or whether, as is the prevailing federal view, such testimony should also be admitted at the defendant's trial for murdering the witness.

*Id.*, at 311 n. 10.

During closing, the Commonwealth argued the preliminary hearing testimony was proof of appellant's motive and intent to commit the murders, N.T. Trial, 8/23–31/04, Vol. III, at 1066–70, and the trial court instructed the jury that it could use proof of each alleged incident as proof of the others for purposes of proving identity, intent, motive, and history of the events. *Id.*, at 1099–1100. In light of our holding *Crawford* does not bar admission of the preliminary hearing testimony, *infra*, we need not address the issue identified in *Paddy* (*i.e.*, whether testimony admissible under the forfeiture by wrongdoing exception is admissible to prove the defendant murdered the witness), as our deci-

appellant's objection and admitted the unsworn statements and preliminary hearing testimony.[14]

Appellant argues even if this evidence was admissible under the "forfeiture by wrongdoing" exception, the Commonwealth failed to meet its burden of demonstrating he caused the witnesses to be unavailable at trial. Appellant further argues the evidence was barred under *Crawford*, as he had no prior opportunity to cross-examine his wife and daughters regarding their unsworn statements, and the cross-examination of his daughters at the preliminary hearing was inadequate to protect his confrontation rights because it did not question their credibility or motive to lie.

We need not address whether the Commonwealth met its burden of proving Pa.R.E. 804(b)(6)'s exception, as the record refutes appellant's claim that he was unable to adequately cross-examine his daughters at the preliminary hearing; thus, even if Rule 804(b)(6)'s exception was not met and *Crawford* applied, there was no Confrontation Clause violation. The record from the preliminary hearing on the sexual offense charges establishes appellant was able to conduct meaningful cross-examination of both daughters. Although a preliminary hearing is concerned with probable cause and not credibility issues, *see Liciaga v. Court of Common Pleas of Lehigh County*, 523 Pa. 258, 566 A.2d 246, 248 (1989) (preliminary hearing magistrate's task is to determine whether there is *prima facie* showing that crime has been committed and that defendant committed it; magistrate not empowered to make credibility determinations regarding witnesses), counsel's cross-examination explored the areas of bias, motive to lie, and lack of credibility.

sion is not based upon Rule 806(b)(6)'s exception. Moreover, as discussed *supra*, at 897, the rape charges were admissible to show motive for the murders under Pa.R.E. 404(b)(1) and *Lark*.

14. Appellant provides no citation to the record identifying the unsworn statements by his wife and daughters that were introduced at trial; therefore, he has waived his argument concerning this evidence, and we will only address his claim concerning the admission of his daughters' preliminary hearing testimony.

Appellant relies on *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), which stated:

> The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial. While there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable, this is not, as we have pointed out, such a case.

*Id.,* at 725–26, 88 S.Ct. 1318 (emphasis added). The prosecution in *Barber* sought to introduce the preliminary hearing testimony of a witness who, at the time of trial, was incarcerated in another state. The defendant had not cross-examined the witness at the preliminary hearing. The United States Supreme Court held the testimony was barred by the Confrontation Clause because the government had not made a good faith effort to obtain the witness's presence at trial. *Id.,* at 724–25, 88 S.Ct. 1318.

Thus, *Barber* involved the issue of whether a witness was unavailable; its conclusion that it "would reach the same result on the facts of this case had [the defendant's] counsel actually cross-examined [the witness] at the preliminary hearing ...[,]" *id.,* at 725, 88 S.Ct. 1318, was based on the state's lack of *any* effort to secure the witness's presence at trial. *See id.,* at 725–26, 88 S.Ct. 1318 ("While there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable, this is not, as we have pointed out, such a case."). Accordingly, appellant's reliance on *Barber* for the proposition that all preliminary hearing testimony is barred from admission at trial when the declarant is unavailable is misplaced.

Although the United States Supreme Court has not directly addressed whether preliminary hearing testimony that was subject to cross-examination is admissible at trial under *Crawford*, several cases pre-dating *Crawford* are instructive. In *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the state sought to admit the preliminary hearing testimony of a witness who was unavailable at trial. In holding such testimony bore sufficient indicia of reliability [15] to be admissible, the Court noted:

Counsel's questioning clearly partook of cross-examination as a matter of *form*. His presentation was replete with leading questions, the principal tool and hallmark of cross-examination. In addition, counsel's questioning comported with the principal *purpose* of cross-examination: to challenge "whether the declarant was sincerely telling what he believed to be the truth, whether the declarant accurately perceived and remembered the matter he related, and whether the declarant's intended meaning is adequately conveyed by the language he employed." Davenport, The Confrontation Clause and the Co–Conspirator Exception in Criminal Prosecutions: A Functional Analysis, 85 Harv. L.Rev. 1378 (1972). ... [H]owever state law might formally characterize the questioning of [the witness], it afforded "substantial compliance with the purposes behind the confrontation requirement," *[California v.] Green*, 399 U.S. [149,] 166 [90 S.Ct. 1930, 26 L.Ed.2d 489] [ (1970) ], no less so than classic cross-examination.

*Id.*, at 70–71, 100 S.Ct. 2531 (emphasis in original). Thus, although the reliability of a prior statement is no longer an inquiry for purposes of satisfying the Confrontation Clause, the Court's rationale that the preliminary hearing questioning served the function of cross-examination remains persuasive for purposes of evaluating whether *Crawford's* cross-examination requirement has been met.

15. *Roberts'* "indicia of reliability" test for admissibility of an unavailable witness's prior testimony was overruled by *Crawford;* in examining *Roberts'* reasoning regarding whether cross-examination of preliminary hearing testimony is sufficient confrontation, we are not resurrecting the *Roberts* test, which was soundly rejected in *Crawford*.

Likewise, in *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the Court concluded the preliminary hearing testimony of a witness who was subject to cross-examination at the hearing was admissible at trial, where the witness claimed he was unable to recall the events to which he had testified to at the hearing. The Court noted:

> *[The witness's] statement ... had already been given under circumstances closely approximating those that surround the typical trial. [The witness] was under oath; [the defendant] was represented by counsel—the same counsel in fact who later represented him at the trial; [the defendant] had every opportunity to cross-examine [the witness] as to his statement; and the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings.* Under these circumstances, [the witness's] statement would, we think, have been admissible at trial even in [the witness's] absence if [he] had been actually unavailable, despite good-faith efforts of the State to produce him.

* * *

[W]e do not find the instant preliminary hearing significantly different from an actual trial to warrant distinguishing [this case from *Mattox v. United States,* 156 U.S. 237 [15 S.Ct. 337, 39 L.Ed. 409] (1895) (holding admission of testimony given at defendant's first trial by witness who had died by time of second trial did not violate Confrontation Clause) ] for purposes of the Confrontation Clause. Indeed, we indicated as much in *Pointer v. Texas,* 380 U.S. 400, 407 [85 S.Ct. 1065, 13 L.Ed.2d 923] (1965), where we noted that "the case before us would be quite a different one had [the witness's] statement been taken at a full-fledged hearing at which [the defendant] had been represented by counsel who had been given a complete and adequate opportunity to cross-examine." And in *Barber v. Page,* 390 U.S. 719, 725–726 [88 S.Ct. 1318, 20 L.Ed.2d 255] (1968), although noting that the preliminary hearing is ordinarily a less searching exploration into the merits of a case than a trial, we recognized that "there may be some justification for holding

that the opportunity for cross-examination of a witness [at] a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable...." *In the present case [the defendant's] counsel does not appear to have been significantly limited in any way in the scope or nature of his cross-examination of the witness ... at the preliminary hearing. If [the witness] had died or was otherwise unavailable, the Confrontation Clause would not have been violated by admitting his testimony given at the preliminary hearing—the right of cross-examination then afforded provides substantial compliance with the purposes behind the confrontation requirement, as long as the declarant's inability to give live testimony is in no way the fault of the State.*

*Id.*, at 165–66, 90 S.Ct. 1930 (emphasis added).

▆▆▆▆ Although the requisites for satisfying the Confrontation Clause have evolved since these decisions, the Court's reasoning concerning cross-examination at a preliminary hearing remains valid. Where the defendant has had the opportunity to cross-examine a witness at a preliminary hearing, probing into areas such as bias and testing the veracity of the testimony, cross-examination, and thus confrontation, within the meaning of the Sixth Amendment has been accomplished. This is particularly so in cases where, as here, the defendant was represented by the same counsel at the preliminary hearing and at trial.

Appellant's counsel questioned Victoria Wholaver in detail at the preliminary hearing about who she told of the assaults and when she told them. N.T. Preliminary Hearing, 8/13/02, at 26–33. Counsel established Victoria failed to inform authorities such as teachers, counselors, health care providers, or her mother, *id.*, at 42, and established her mother's presence in the household, indicating her mother would have known what was going on at the time of the alleged assaults. *Id.*, at 45–46. Counsel elicited testimony regarding Victoria engaging in amicable relations with appellant, establishing conduct inconsistent with her allegations of rape and fear of her father. *Id.*, at 38–40. Counsel elicited a concession that

Victoria hated her father, establishing bias. *Id.*, at 43. Counsel furthered questioned Victoria about her opportunity to influence her sister's testimony, *id.*, at 35–37, and about past instances of dishonesty. *Id.*, at 37.[16]

Counsel questioned Elizabeth Wholaver about Victoria's influence on her testimony, and elicited the fact she only told others about the alleged offenses after Victoria told her appellant had raped her. *Id.*, at 62–63. Counsel questioned Elizabeth regarding who she told about the assaults, and established her failure to inform authorities, school and health care personnel, or her mother. *Id.*, at 68–70. Counsel established the lack of other witnesses, *id.*, at 71, and Elizabeth's lack of specific recollection of appellant's acts. *Id.*, at 66–67. Finally, counsel questioned Elizabeth about recreational activities she engaged in with appellant during the time frame the alleged assaults occurred, establishing conduct inconsistent with her allegations. *Id.*, at 71–72.

The above cross-examination explored the areas of bias, motive to lie, veracity, inconsistency, and outside influence— all areas which would have been explored by defense counsel at trial, had appellant's daughters been available. Thus, we cannot say the confrontation element of *Crawford* was not met by this questioning at the preliminary hearing. Accordingly, regardless of whether Rule 804(b)(6)'s exception was applicable, the preliminary hearing testimony was admissible at trial.

Appellant next claims the trial court erred in denying his motion to exclude co-defendant Scott Wholaver's testimony because it was without a factual basis and was the product of an illegal plea agreement. Scott, appellant's brother, pled guilty to third degree murder in exchange for his testimony against appellant. Appellant contends Scott's statement in his plea agreement, that he was a substantial cause of the victims' deaths because he previously heard appellant indicate his

16. Questions concerning specific instances of conduct may not be used to attack a witness's character for truthfulness. *See* Pa.R.E. 608(b)(1). Thus, such cross-examination would not have been permissible at trial. However, appellant was permitted to employ this line of questioning at the preliminary hearing.

intention to kill them, was contradicted by Scott's preliminary hearing testimony, which did not implicate appellant or Scott in any wrongdoing. Thus, appellant argues Scott's preliminary hearing testimony shows the plea agreement's recitation of facts was false, and there was no factual basis to support Scott's guilty plea. In light of this alleged factual inconsistency, appellant contends the trial court should have exercised its inherent authority to examine Scott's plea agreement under Pa.R.Crim.P. 590,[17] found the plea agreement was illegal, and excluded Scott's testimony as fruit of the poisonous tree.

The trial court ruled appellant lacked standing to challenge the validity of his co-defendant's plea agreement,[18] and we agree. To establish standing to challenge a governmental action, appellant must establish he is aggrieved by the action, *i.e.*, he has a substantial, direct, immediate, and not remote interest in the subject-matter of the litigation. *Commonwealth v. J.H.*, 563 Pa. 248, 759 A.2d 1269, 1271 (2000). "[T]o have a substantial interest in the subject-matter of the litigation, there must be a discernible adverse effect to some interest other than in the abstract." *Id.* Appellant fails to demonstrate an immediate, rather than remote, interest in the plea agreement between his co-defendant and the Commonwealth. The fact that Scott's testimony against appellant *may* have resulted in appellant's conviction is insufficient to establish either a direct interest or a causal connection.

Furthermore, the Tenth Circuit's rationale in rejecting several defendants' challenges to their co-defendants' plea agreements is persuasive:

17. The Comment to Rule 590 provides the trial court should, in conducting a plea colloquy, assess whether there is a factual basis for the plea. *See* Pa.R.Crim.P. 590, cmt.; *see also Commonwealth v. Willis*, 471 Pa. 50, 369 A.2d 1189, 1190 (1977) (mandating that trial court, during plea colloquy, elicit information set forth in Comment to Rule 590).

18. Although the trial court initially denied appellant's motion on its merits, it subsequently concluded in its Pa.R.A.P. 1925(a) opinion that appellant lacked standing. *Cf.* Trial Court Opinion, 4/21/04, at 13–15 *and* Trial Court Opinion, 9/11/07, at 46–47.

[I]n order to accept [the defendants'] position, we would be required to hold that in every case in which some defendants choose to plead guilty while others choose to stand trial, a very common situation indeed, those who go to trial have standing to challenge the validity of their codefendants' plea agreements and the factual bases of their guilty pleas. Such challenges would require the government to prove the factual representations made in the plea agreements and during the plea colloquies of any codefendants from whom it planned to elicit testimony. It would also force the district court and the court of appeals to entertain what would essentially be a collateral attack on a guilty plea by those who chose to stand trial, whether or not the party who pled guilty has any desire to challenge his conviction. We are unwilling to impose such burdens on the government and the courts or to so completely pervert the existing procedures.

*United States v. Ivy,* 83 F.3d 1266, 1282–83 (10th Cir.1996). Therefore, we uphold the trial court's conclusion that appellant lacked standing to challenge Scott's plea agreement, and find no abuse of discretion in the admission of Scott's testimony at trial.

■■■ Appellant argues the trial court erred in precluding him from introducing a statement he made to Scott under the present sense impression or excited utterance exceptions to the hearsay rule.[19] Appellant made the statement to Scott upon returning to the car five to ten minutes after he got out and left Scott in the car; appellant alluded to seeing the lifeless bodies of his family, indicating someone else was responsible for the killing, with words to the effect of: "I only looked in the window, and you won't believe what I saw." N.T. Trial, 8/27–31/04, Vol. I, at 410. The Commonwealth filed a motion *in limine* to exclude the statement as hearsay, which the trial court granted. At trial, appellant's counsel

19. Although appellant mentions the present sense impression exception, he did not argue it at trial; therefore, it is waived, and we will only consider the excited utterance exception. *See* Pa.R.A.P. 302(a) ("Issues not raised in lower court are waived and cannot be raised for first time on appeal.").

began to cross-examine Scott about appellant's demeanor upon returning to the car, asking Scott what appellant said to him. The prosecutor objected, reminding the court, at sidebar, of its pre-trial ruling. Appellant's counsel argued the statement was an excited utterance. The trial court held the statement was inadmissible, unless counsel could lay a foundation for it. Cross-examination continued, and when defense counsel again asked Scott whether appellant "[said] other things to you while he was jittery, nervous and excited" after returning to the car, *id.*, at 413, the prosecutor objected, and the trial court sustained the objection.

 The excited utterance exception provides "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is admissible even if the declarant is available as a witness. Pa.R.E. 803(2). This court has further defined such statement as:

> A spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.

*Commonwealth v. Jones,* 590 Pa. 202, 912 A.2d 268, 282 (2006) (quoting *Commonwealth v. Stokes,* 532 Pa. 242, 615 A.2d 704, 712 (1992)). There is no clearly defined time limit within which the statement must be made after the startling event; the determination is factually driven, made on a case-by-case basis. *Id.; see also Commonwealth v. Boczkowski,* 577 Pa. 421, 846 A.2d 75, 95–96 (2004). "The crucial question, regardless of the time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance." Pa.R.E. 803(2), cmt. (quoting *Commonwealth v. Gore,* 262 Pa.Super. 540, 396 A.2d 1302, 1305 (1978)).

As the trial court noted, appellant's statement related to an event outside the house—his asserted non-involvement in the murders ("I only looked in the window ..."); thus, it did not relate to a startling event, but merely was an expression whereby appellant distanced himself from the crime. *See* Trial Court Opinion, 9/11/07, at 51. Furthermore, the trial court ruled five to ten minutes was sufficient time for appellant to have engaged in reflective thought, even if he actually first glimpsed the bodies through the window, as he asserted. *Id.,* at 52. We perceive no abuse of discretion by the trial court in excluding this self-serving attempt by appellant to shield himself from blame for the murder of his family.

### Penalty Phase

Appellant contends the trial court erred in allowing incorporation of evidence from the guilt phase, concerning nine-month-old Madison Wholaver's dehydrated condition, into the penalty phase. Appellant argues this evidence was admitted at the guilt phase solely to establish time of death,[20] and since time of death was no longer at issue in the penalty phase, a limiting instruction should have been given regarding this evidence. As trial counsel did not request such instruction, appellant further asserts trial counsel's ineffectiveness.

Contrary to appellant's assertion, the evidence concerning Madison's dehydration was admitted at the penalty phase in support of the aggravating circumstance at 42 Pa. C.S. § 9711(d)(7) (in commission of offense, defendant knowingly created grave risk of death to another person in addition to victim). *See* N.T. Trial, 8/23–31/04, Vol. III, at 1179–80. Based on the fact Madison could not crawl and was found next to her mother's body, it is reasonable to conclude appellant was aware of her presence when he shot her mother, and killing all of the adults in the household would jeopardize the baby's survival. Therefore, evidence that Madison was severely dehydrated was relevant to establish appellant know-

20. Based on Madison's level of dehydration when she was found next to her mother's body, a medical expert was able to conclude she had been alone for approximately 30 hours. N.T. Trial, 8/23–31/04, Vol. I, at 99–101.

ingly created a grave risk of death to her. Furthermore, once appellant's guilt was determined, incorporation of guilt phase evidence into the penalty phase was "purely a procedural matter carried out pursuant to 42 Pa.C.S. § 9711." *Commonwealth v. Williams*, 586 Pa. 553, 896 A.2d 523, 545 (2006). Appellant's claim, therefore, is meritless.

Appellant contends the prosecutor engaged in misconduct by improperly arguing a non-statutory aggravating factor, telling the jury that killing one's family trumped § 9711(e)(8)'s "catch-all" mitigator:

*The other [mitigator] is the catch all. Any other evidence of mitigation concerning the character and record of the defendant and circumstances of his events,* including he doesn't have a criminal history.

[Defense counsel] alleged he is a loving brother, hard worker, those sort of things. You decide whether or not that mitigating circumstance has been proven.

The mere fact, just like in the first part of the trial, the mere fact a witness testified about it doesn't make it so. You must decide whether it has been proven.

I submit to you that the character and record of the defendant and the circumstances of his offense are not mitigators.

*This [d]efendant, who killed his own family, he killed his own family, one of them was a child, age 15. These are circumstances of the offense. And taken as part of this catch all they trump it. They trump that mitigator and that mitigator has not been proven to you.*

N.T. Trial, 3/23–31/04, Vol. III, at 1225–26 (emphasis added).

A prosecutor's comments do not constitute reversible error unless their unavoidable effect is to prejudice the jury, giving it a fixed bias and hostility toward the defendant, so it cannot objectively weigh the evidence and render a true verdict. *Commonwealth v. Hughes*, 581 Pa. 274, 865 A.2d 761, 801 (2004). "Such assessment requires that the remarks be considered contextually, including whether the argument was responsive to the defense closing." *Id.* Furthermore, a prose-

cutor is afforded greater latitude in the penalty phase closing argument, when guilt has already been determined and the presumption of innocence thus no longer applies. *Id.,* at 808.

Read in context and in its entirety, the prosecutor's argument was that, based on the circumstances of the offense, appellant had not proven the catch-all mitigator. *See* N.T. Trial, 8/27–31/04, Vol. III, at 1229 ("It is up to the jury to decide whether the [d]efendant's record and the circumstances of the offense are mitigating circumstances or not ... and circumstances of this offense and the [d]efendant's character and record are not mitigating.") The prosecutor argued the Commonwealth was free to address the catch-all mitigator's applicability on its general terms—"the character and record of the defendant and the circumstances of his offense"— without being confined to specific aspects emphasized by the defense, such as appellant's reputation as a good son, good family member, and hard worker. *Id. See* 42 Pa.C.S. § 9711(e)(8). Furthermore, the trial court instructed the jury specifically regarding which aggravators and mitigators the parties sought to establish. *Id.,* at 1235–36. Accordingly, this issue is meritless.

Having previously determined appellant's death sentence was not the product of passion, prejudice, or any other arbitrary factor, *see Wholaver,* at 1185 (citing 42 Pa.C.S. § 9711(h)), we affirm his convictions and death sentences. The Prothonotary is directed to transmit the complete record in this case to the Governor pursuant to 42 Pa.C.S. § 9711(i).

Judgment of sentence affirmed.

Chief Justice CASTILLE and Justices BAER, TODD and McCAFFERY join the opinion.

Chief Justice CASTILLE files a concurring opinion.

Justice SAYLOR files a concurring opinion.

Chief Justice CASTILLE, concurring.

I join the Majority Opinion in its entirety. I write separately only to supplement the Majority's resolution of appellant's

claim that the trial court erred in precluding him from introducing an out-of-court statement he made to his brother (and co-defendant) Scott Wholaver, which appellant argued fell under the excited utterance exception to the hearsay rule. *See* Maj. Op. at 363–65, 989 A.2d at 906. For the reasons set forth below, in my view, even if the statement at issue otherwise qualified as an excited utterance, we should be wary of admitting obviously self-serving statements by a party who, like appellant here, declines to take the stand and expose himself to cross-examination.

Appellant claims that when he returned to the car where Scott had been waiting for five to ten minutes, he said, "I only looked in the window, and you won't believe what I saw." N.T. Trial, 8/27–31/04, Vol. I, at 410. The statement, which referred to appellant seeing the lifeless bodies of his family, was intended to suggest that the murders were committed by someone else prior to appellant arriving at the house. The trial court ruled that the statement was inadmissible both pretrial on the Commonwealth's motion *in limine,* and during the cross-examination of Scott. In its opinion, the trial court found that the statement was a mechanism whereby appellant sought to distance himself from the murders and that the five to ten minutes that appellant was absent from the car was sufficient time for reflection, thereby negating the excited utterance exception. The Majority properly finds no abuse of the trial court's discretion in excluding appellant's self-serving statement.

The underlying rationale of the excited utterance exception is the notion that a statement made in the excitement of a startling event, before the speaker has the opportunity to reflect on the event, has sufficient indicia of truthfulness to warrant admission.

An excited utterance is the event speaking and not the speaker. It is an exception to the hearsay rule, carved from human experience, which teaches that an unreflected, spontaneous utterance made under the impact of a shocking, unexpected emotion, precipitated by a traumatic event, renders the speaker the medium and not the message. Such

an utterance is allowed in evidence because it is spontaneous and unreflected, without influence from thought, design and reason.

*Commonwealth v. Zukauskas,* 501 Pa. 500, 462 A.2d 236, 237 (1983).

Like the trial court and the Majority here, the *Zukauskas* court ultimately ruled that the time that elapsed between the event and the defendant's statement in that case negated the excitement or shock required for the statement's admission. But, in my view, where statements proffered by the non-testifying accused are exculpatory, there is substantial reason to question their reliability and this fact provides an independent reason not to apply the excited utterance exception. Some courts have touched on this reality. For example, in *Commonwealth v. Simms,* 284 Pa.Super. 528, 426 A.2d 620 (1981), the prosecutor, in his opening statement, referred to a statement made at the time of their arrest by Simms' co-defendant (Mills) that Simms had given him the drugs the police found. In response to Simms' motion for a mistrial, the prosecutor argued that Mills' statement was an excited utterance. The trial court granted the mistrial. On appeal to the Superior Court, the central question was whether double jeopardy barred retrial. The court rejected the Commonwealth's argument that Mills' statement qualified as an excited utterance, reasoning as follows:

[W]e agree with the reasoning of the trial court that the statement does not fit within the rationale of the "excited utterance" exception, "(s)ince that rationale lies in the special reliability" of such an utterance and "(t)he self-serving nature of Mills' statement destroys any indicia of reliability."

*Id.* at 623 n. 10.

In *Lininger v. Kromer,* 238 Pa.Super. 259, 358 A.2d 89 (1976), the Superior Court noted that, "Whether a statement is spontaneous depends on the peculiar facts and circumstances of each case." *Id.* at 93 (citing *McCurdy v. Greyhound Corp.,* 346 F.2d 224 (3d Cir.1965)). The court then

quoted McCormick, Evidence, § 288 at 706–07 (2d ed. 1972), regarding a self-serving statement:

> "Evidence that the statement was self-serving or made in response to an inquiry, while not justification for automatic exclusion, is an indication that the statement was the result of reflective thought, and where the time interval permitted such thought these factors might swing the balance in favor of exclusion."

*Lininger*, 358 A.2d at 94 (quoting McCormick).

Some federal courts have rejected the argument that a defendant's exculpatory out-of-court statement is admissible as an excited utterance. For example, in *United States v. Sewell*, 90 F.3d 326 (8th Cir.1996), the Eighth Circuit considered the defendant's statement that a gun found by police did not belong to him and stated:

> Defendant's argument that he was merely reacting naturally to the "shock" of an "extraordinarily startling event"- i.e., the discovery of a weapon in his possession-is unconvincing. Where incriminating evidence is discovered in one's possession, it requires only the briefest reflection to conclude that a denial and plea of ignorance is the best strategy. This hardly comports with the spirit of disinterested witness which pervades the rule. There is no evidence that the defendant's self-serving statement derived from an uncontrolled "excitement" experienced while learning of the evidence against him.

*Id.* at 327. *See also United States v. Elem*, 845 F.2d 170, 174 (8th Cir.1988) (exculpatory statements made by defendant after he was in custody and focus of criminal investigation not admissible as excited utterances).

In sum, I believe that an exculpatory statement made by a criminal defendant in the aftermath of his crime simply does not carry the indicia of truthfulness required for an excited utterance to be admissible as an exception to the hearsay rule. Particularly where, as here, the defendant exercises his right not to testify, but seeks to introduce such self-serving "testi-

mony" that would not be subject to cross-examination, I would be disinclined ever to recognize the exception.

Justice SAYLOR, concurring.

I join the majority opinion, except for its reasoning pertaining to Appellant's claims centered on his requests for expert assistance; his claimed excited utterance; and the prosecutor's emphasis on his killing of his own family as trumping the defense mitigation case at the penalty stage.

As to the first of these claims, I would rest the disposition of the claim of underfunding more squarely on Appellant's failure to request additional funds upon a showing of further cause after exhaustion of the funds that were allocated. Furthermore, I would specifically address Appellant's claim that the court-appointed psychologist was not competent to assist the defense. *See* Brief for Appellant at 18.

As to the asserted excited utterance, I do not fully understand the majority's position that Appellant's statement related only to an event outside the house, *see* Majority Opinion, at 364–65, 989 A.2d at 906, when the alleged emotional impact arises from Appellant's claim to having seen something in the house (presumably, indicia that one or more of his family members had been killed). The substantial reliance on the passage of five to ten minutes time for reflection is also problematic, as certainly courts have held that declarants may remain under the stress from severe emotional events for longer periods of time. *See* KENNETH S. BROUN, 2 McCORMICK ON EVIDENCE § 272 (6th ed. 2006) ("Passage of time viewed in isolation is not an entirely accurate indicator of admissibility. For example, while courts have held statements made twelve or more hours after a physical beating to be the product of the excitement caused by the beating, other courts have held statements made within minutes of the event not admissible." (footnotes omitted)).

In my view, the statement could reasonably have been excluded based upon the overall circumstances under which it allegedly was made (*e.g.*, at the destination of a surreptitious trip to a location from which Appellant had been lawfully

excluded and after sufficient time for Appellant to have actually committed the murders, as there was substantial evidence that he did). Moreover, given the vague and self-serving character of the asserted declaration (as noted by the majority), and the weight of the other evidence of Appellant's guilt, it does not seem to me that there is any real likelihood that it would have had any impact on the verdict. Thus, I find any error in the trial court's statement of its reasons for exclusion of the evidence to have been harmless.

Finally, concerning Appellant's last claim, that the prosecutor engaged in misconduct by stressing that Appellant killed his own family as rebuttal to the defense mitigation case, the majority appears to accept the prosecutor's position that "the Commonwealth was free to address the catch-all mitigator's applicability on its general terms—'the character and record of the defendant and the circumstances of his offense'— without being confined to specific aspects emphasized by the defense[.]" Majority Opinion, at 367, 989 A.2d at 908. Such position, however, is contrary to law, since rebuttal is confined to particular form of mitigation put into issue by the defense. *See Commonwealth v. Hughes,* 581 Pa. 274, 333–34 & n. 40, 865 A.2d 761, 796–97 & n. 40 (2004) (explaining that the appropriate scope of rebuttal mitigation is defined according to the evidence that it is offered to rebut). I am able to join the result obtained under the majority opinion only because the prosecutor also related the comments to Appellant's character (which was implicated by the defense mitigation case). *See* N.T., August 31, 2004, at 1229. In this regard, I agree that the comments were sufficiently related to Appellant's character—particularly as he was portrayed in the defense mitigation case as "loving." *See id.* at 1204.