J-S82004-18
J-S82005-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEROY CALBERT JR. | : | |
| | : | |
| Appellant | : | No. 1436 EDA 2018 |

Appeal from the Judgment of Sentence November 12, 2013
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0005772-2013

\*\*\*\*\*

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEROY CALBERT JR. | : | |
| | : | |
| Appellant | : | No. 1439 EDA 2018 |

Appeal from the Judgment of Sentence November 12, 2013
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0002065-2013

BEFORE:   LAZARUS, J., OLSON, J., and STRASSBURGER\*, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 05, 2019**

Leroy Calbert, Jr., appeals from the judgments of sentence, entered in

the Court of Common Pleas of Delaware County, after he entered negotiated

_____
\*   Retired Senior Judge assigned to the Superior Court.

guilty pleas to various drug charges on two separate criminal dockets[1] and was sentenced to an aggregate term of 10 to 20 years' imprisonment.[2]  After review, we reverse and remand for an evidentiary hearing.

The trial court aptly summarized the relevant facts of the underlying case:

> On February 27, 2013, at approximately 6:30 a[.]m[.], members of the Delaware County Drug Task Force in possession of Search Warrant number 65-0125-13 entered the residence of . . . Leroy Calbert located at 703 Pine Street, Darby, PA 19023, and conducted a search and seizure of controlled substances. [Calbert] was present during the search and was located lying in bed in the front second floor bedroom.  Recovered from the residence as a result of the search were:  a scale with residue; packing material with gloves and a razor; 1 empty pill bottle; several pill bottles containing a total of 243 assorted pills; 282 small plastic bags each containing crack cocaine; 4 large plastic bags each containing marijuana; 2 boxes of ammunition; a holster; a Ruger P95 [s]emi-automatic 9[]mm loaded with 9 live rounds in the magazine and 1 round in the chamber; a Rossi [.]357 Magnum revolver loaded with 6 live rounds; a shoe box containing $128 in U.S. currency; and $473 in U.S. currency from [Calbert's] pocket.
>
> *    *    *
>
> On September 6, 2013, at approximately 3:50 p[.]m[.], a search warrant was served at 515 Chester Pike, Norwood, PA  19072. Prior to entering the residence, officers stopped [Calbert] in a silver Ford Fiesta in a rear parking lot.  As officers stopped [Calbert] he discarded numerous oxycodone hydrochloride pills.

---

[1] Calbert filed separate notices of appeal from each of the two dockets, CP-23-CR-5772-2013 and CP-23-CR-2065-2013.  **See Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018).  We have consolidated them on appeal for ease of disposition.  **See** Pa.R.A.P. 513 (consolidation of multiple appeals).

[2] The court also imposed a consecutive four-year probationary term on docket No. 5772.

Officers additionally searched [Calbert's] vehicle and recovered a clear plastic bag containing 7 small bags of cocaine, several drug tally sheets, and $608 in U.S. currency. At approximately 3:53 p[.]m[.], the officers searched the residence at 515 Chester Pike. Seized from the residence were drug paraphernalia and several clear plastic bags containing cocaine residue. Seized from the residence during the search were: drug paraphernalia, 33.8 grams of cocaine; 5.9 grams of marijuana; two plastic bags containing 891 oxycodone hydrochloride pills; several pill bottles containing 46 oxycodone hydrochloride pills; and $3644 in U.S. currency.

Trial Court Opinion, 6/20/14, at 1-2.

Calbert was arrested and charged with various drug and firearm offenses for both criminal episodes. On November 12, 2013, he entered counseled negotiated guilty pleas, on both cases, to possession of a controlled substance, criminal conspiracy to possession of a controlled substance, and possession of drug paraphernalia. He was sentenced to an aggregate term of 10-20 years in prison. On December 5, 2013, Calbert filed a *pro se* notice of appeal, along with a *pro se* request for leave to withdraw his guilty plea and a motion to withdraw his guilty plea. The court appointed counsel to represent Calbert, but did not address the withdrawal motion. On appeal, Calbert claimed that his plea was unknowing because he was unaware that the sentences at each docket were going to be imposed consecutively. Our Court affirmed Calbert's judgment of sentence, finding his claim waived for failing to preserve it prior to sentencing, at sentencing, or in a timely post-sentence motion. **Commonwealth v. Calbert**, 113 A.3d 358 (Pa. Super. filed Nov. 25, 2014) (unpublished memorandum).

- 3 -

On February 3, 2016, Calbert filed a timely *pro se* PCRA petition; PCRA counsel was appointed and was later permitted to withdraw. New counsel was appointed; however, Calbert elected to proceed *pro se*. The court held a *Grazier*[3] hearing and granted Calbert's *pro se* request. On October 16, 2016, the court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Calbert's petition without a hearing. Calbert responded to the notice; however, the court dismissed the petition on January 9, 2017. Calbert filed a *pro se* notice of appeal raising fourteen issues. On appeal, our Court concluded that five issues were waived because Calbert did not raise them in his Pa.R.A.P. 1925(b) statement and also failed to preserve them "before trial, at trial, during unitary review, on appeal, or in a prior state post-conviction proceeding." 42 Pa.C.S.A. § 9544(b). The Court also found Calbert's legality of sentence issue waived on appeal for failing to develop the claim. Finally, with regard to Calbert's ineffectiveness of direct appeal counsel claims, the Court found them meritless. However, with regard to Calbert's issues relating to plea counsel's alleged ineffectiveness, the Court vacated the PCRA order and remanded the case for further proceedings, stating:

> [O]n direct appeal we questioned plea counsel's status and further questioned why [Calbert's] *pro se* filings were not forwarded to [plea counsel].
>
> Neither the PCRA court nor the Commonwealth directly addresses this claim. Rather, both assert that the guilty plea proceedings

---

[3] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

> establish that Guilty Plea Counsel's representation was effective. As correctly recognized by [Calbert], however, if counsel is found to have ignored a petitioner's request to file an appeal, or did not consult with him regarding same, the petitioner is entitled to the reinstatement of his appeal rights *nunc pro tunc* and no merit analysis of any other issues occurs.

***Commonwealth v. Calbert***, 179 A.3d 530 (Pa. Super. filed Oct. 2, 2017) (unpublished memorandum).

Upon remand, Calbert requested that the trial judge recuse. The judge acquiesced to that request and the Honorable Mary Alice Brennan was assigned to the case; new PCRA counsel was appointed. Counsel filed an amended PCRA petition on January 3, 2018, claiming that plea counsel failed to file motions to withdraw the guilty pleas despite Calbert's timely request to do so. The Commonwealth agreed that plea counsel had failed to file the subject motions and agreed that Calbert was entitled to PCRA relief in the form of permission to file post-sentence motions *nunc pro tunc*.

On February 1, 2018, the court granted Calbert's petition and reinstated his right to file post-sentence motions. On February 9, 2018, counsel filed post-sentence motions raising various claims of ineffectiveness of "trial/plea counsel . . . prior to and during the plea and post[-]sentence time period," resulting in a plea that was not knowing, intelligent and voluntary. Post-Sentence Motions, 2/9/18, at 4-6. On April 9, 2018, the court dismissed the motions without a hearing. On April 18, 2018, Calbert filed a motion for reconsideration of the court's denial; the court denied reconsideration on April 26, 2018, stating that after "having twice reviewed the guilty plea transcripts and other evidence produced herein, the court [hereby] finds **no manifest**

**injustice** and therefore Defendant's [m]otion is [denied]." Order, 4/26/18

(emphasis in original). Calbert filed a timely notice of appeal and court-

ordered Rule 1925(b) concise statement of errors complained of on appeal.

Calbert presents one issue for our consideration:

> Whether the trial court abused its discretion and committed an error in denying [Calbert's] post[-]sentence motions, without permitting [Calbert] the opportunity to present witnesses and submit evidence to substantiate the claims of ineffective assistance of trial/plea counsel at an evidentiary hearing, when the Superior Court had specifically ordered the trial court to conduct an evidentiary hearing on those issues.

Appellant's Brief, at 6.

When a defendant enters a negotiated guilty plea, he waives his right

"to challenge on appeal all non-jurisdictional defects except the legality of her

sentence and the validity of her plea." ***Commonwealth v Rush***, 909 A.2d

805, 807 (Pa. Super. 2006). Moreover, a defendant who attempts to withdraw

a guilty plea after sentencing must demonstrate "a showing of prejudice on

the order of manifest injustice . . . before withdrawal is justified."

***Commonwealth v. Muhammad***, 794 A.2d 378, 383 (Pa. Super. 2002). A

showing of manifest injustice may be established if the plea was entered into

involuntarily, unknowingly, or unintelligently. ***Id.***

Pennsylvania Rule of Criminal Procedure 590 suggests that a trial court

should delve into six areas of inquiry with a defendant as part of the plea

process. Those areas are: (1) the nature of the charges; (2) the factual basis

of the plea; (3) the right to trial by jury; (4) the presumption of innocence;

(5) the permissible range of sentences; and (6) the judge's authority to depart

- 6 -

from any recommended sentence. Pa.R.Crim.P. 590, Comment. Despite the rule's suggestive language, our Supreme Court has deemed these areas of inquiry to be mandatory. *See Commonwealth v. Willis*, 369 A.2d 1189, 1190 (Pa. 1977) ("[T]he above six questions are mandatory during a guilty plea colloquy and the failure to 'satisfy these minimal requirements will result in reversal.'") (citation and quotation omitted); *see also Commonwealth v. Wholaver*, 989 A.2d 883, 905 n.17 (Pa. 2010) (affirming mandatory language from *Willis*.).

The Commonwealth notes in its response to Calbert's motion for reconsideration, "[a]lthough [Calbert] indicates that he has witnesses to present, the fact remains that [he], under oath, entered knowing, intelligent and voluntary guilty pleas." Commonwealth's Response to Motion to Reconsider, 4/20/18. The record supports the following facts: Calbert indicated under oath at his plea colloquy that he discussed with counsel the charges and maximum statutory penalties associated with those charges; he admitted that he was satisfied with his attorney; he acknowledged that he understood the nature of the charges to which he was pleading; he agreed to waive a pre-sentence investigative report; he acknowledged he reviewed his post-sentence rights with his attorney; he made his written colloquy part of the record; and he indicated that there was a factual basis to the plea.

Despite these facts and the trial court granting[4] Calbert *nunc pro tunc* relief upon the most recent remand, the issue still remains as to whether counsel fully explained the negotiated plea deal to Calbert, in particular the *total amount* of incarceration he could receive on the negotiated charges if the charges on each docket were run consecutive to one another and whether there was, as part of the negotiation, an agreement regarding that issue. Neither the oral or written guilty plea colloquies shed light on this issue.

Immediately prior to Calbert's entry of his negotiated plea and its acceptance by the trial court, Calbert indicated on the record that he did not want to accept the Commonwealth's plea offer. *See* N.T. Plea Hearing, 11/12/13, at 10. Calbert stated that counsel had presented the offer to him, explained it to him, and that he had an opportunity to discuss it with his attorney and he still did not want to enter a guilty plea. In discussing the offer, the assistant district attorney consistently mentioned that if the mandatory minimums were applied and the sentences on the two dockets run consecutively that Calbert, a 54-year-old, could essentially be getting "a life sentence." *Id.* at 16. The court, in an abundance of caution, told counsel to

_____

[4] Interestingly, the Commonwealth states in its brief that "plea counsel did fail to file motions to withdraw the guilty plea despite the defendant's request . . . [and, thus,] agreed the defendant was entitled to PCRA relief in the form of permission to file post[-]sentence motions." Appellee's Brief, at 10. This statement, however, contradicts the Commonwealth's statement in its prior brief noting that "[t]here is no suggestion that counsel was aware of [Appellant's] claim before the ten-day period to file for a motion to withdraw [the plea] expired." Commonwealth's Brief, Appeal No. 395 EDA 2017, 6/29/17, at 22.

let Calbert have "like a week or so to think about this so he could make a knowing and intelligent decision" since the trial judge didn't "know that [Calbert] was apprised of all of this until just this afternoon or this morning." *Id.* at 15. The parties agreed to give Calbert until December 3, 2013, to consider the plea agreement. However, Calbert's attorney then asked for "a moment" to sit with his client. *Id.* at 17. Ten minutes later counsel came back, asked for five minutes to "do the Plea agreement" and Calbert entered his plea. *Id.* at 17-18. In imposing his negotiated sentence, the court stated as follows:

> **THE COURT:** All right. With regard to 2065 of 2013, Count 2 . . . . I sentence you to 52 to 104 months SCI. With regard to Count 3 . . . I sentence you to 72 to 144 months SCI, which shall run concurrent with Count 2. . . . Count 1 and Counts 4 through 9, inclusive, are dismissed as part of the Negotiated Plea. With regard to 5772 of 2013, Count 4 . . . I sentence you to 48 to 96 months SCI. . . . With regard to Count 5 . . . I sentence you to four years [of] probation to run consecutive to Count 4. . . . Counts 1 through 3 and 6 through 10, are dismissed as part of the Negotiated Plea. **The sentence in 5772 of 2013 shall run consecutive with the sentence in** 2026 - - **2065** - - excuse me - - **of 2013**. In imposing this sentence, the Court considered the District Attorney's recommendation, the nature and seriousness of the violation, as well as Defendant's age, education, and familial and marital, employment status, as well as any comments on the Defendant's behalf by Defense counsel, Defendant's remarks to the Court, the Negotiated Plea, and the Pennsylvania Sentencing Guidelines. All right.

*Id.* at 26-28.

The court only mentions the fact that the sentences on the two separate dockets run consecutive to one another one time in the protracted recitation

- 9 -

of counts, penalties, and dismissed charges. The court does state, however, that count 5 is to run consecutive to count 4 – but these are two counts on the same docket. Based on the convoluted nature of the sentencing proceedings, it is highly likely that Calbert misunderstood what charges on which docket were ordered to run consecutive to one another.

Moreover, this concern is compounded by the fact that our Court has never explored this issue on its merits in prior appeals due to waiver and that, despite the court's urging and the Commonwealth's agreement that counsel take two to three weeks to explain the plea terms to him, counsel talked to Calbert for a mere five minutes before he entered his plea. Subsequent letters written by Calbert, as well as by several of his family members, indicate that he was under the impression that his sentences on the separate dockets would not run consecutive to one another. In fact, our Court acknowledged in Calbert's prior appeal that his "assertions have raised a factual issue to be resolved at an evidentiary hearing" and on direct appeal our Court "questioned plea counsel's status and further questioned why [Calbert's] *pro se* filings were not forwarded to him." **Calbert**, 179 A.3d at *9.

Accordingly, we conclude that Calbert's claims involving counsel's stewardship (both before and after the entry of his plea),[5] which may have

_____

[5] On remand, we confine the hearing to a review of only those issues that were found not waived or meritless by our Court in Calbert's prior appeal. **See Commonwealth v. Calbert**, **supra** (finding issues 6, 7, 8, 11, and 12

affected the voluntariness of his plea need to be assessed on a full record, not a cold record. This can only be accomplished by holding a hearing where trial/plea counsel[6] testifies on such matters. Accordingly, we reverse Calbert's judgments of sentence and remand for a hearing on the merits of his post-sentence motions, consistent with the dictates of this decision.

Judgments of sentence reversed; case remanded.[7] Jurisdiction relinquished.

Judge Strassburger joins this Memorandum.

Judge Olson concurs in the result.

_____

waived; finding issue 13 undeveloped; and finding issue 3 lacks arguable merit).

[6] We note that on October 20, 2016, trial/plea counsel, Fincourt B. Shelton, Esquire, was suspended from the Bar of the Commonwealth of Pennsylvania for a period of four years, effective 30 days following entry of the suspension order. *See* Order, 10/20/16; *see also* Pa.R.D.E. 217(d)(1). Instantly, Calbert's plea was entered on November 12, 2013, and his direct appeal disposed of by this Court in November 2014. Notably, our Court affirmed Calbert's judgment of sentence, finding his issues waived on appeal due to counsel's failure to raise the claim at his plea and sentencing hearings or in a timely filed post-sentence motion. Subsequently, Calbert filed a *pro se* PCRA and new counsel was appointed. That counsel was permitted to withdraw and new counsel was appointed. Calbert chose to proceed *pro se* after a ***Grazier*** hearing; his petition was dismissed without a hearing. Thereafter, Calbert filed a collateral appeal to our Court, forming the basis for this appeal, where he claims that the trial court failed to follow our Court's remand instruction.

[7] If, after the hearing, the trial court does not believe that Calbert is entitled to withdraw his plea, then it shall reinstate his original judgment of sentence.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/5/19