J-E01008-20, J-E01009-20, J-E01010-20, & J-E01011-20

2020 PA Super 164


COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
v. :
:
:
:
JEROME JOHNSON, :
:
Appellant. : No. 1620 EDA 2018


Appeal from the Judgment of Sentence, May 11, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0005331-2014,
CP-51-CR-0005332-2014, CP-51-CR-0009453-2014,
CP-51-CR-0012063-2015.


COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
v. :
:
:
:
JEROME JOHNSON, :
:
Appellant. : No. 2045 EDA 2018


Appeal from the Judgment of Sentence Entered, May 11, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0005331-2014,
CP-51-CR-0005332-2014, CP-51-CR-0009453-2014,
CP-51-CR-0012063-2015.

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                      : PENNSYLVANIA
                                                      :

              v. : 

                                                      :

JEROME JOHNSON, :
                                                      :

                 Appellant. : No. 2046 EDA 2018

Appeal from the Judgment of Sentence Entered, May 11, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0005331-2014,
CP-51-CR-0005332-2014, CP-51-CR-0009453-2014,
CP-51-CR-0012063-2015.

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                      : PENNSYLVANIA
                                                      :

              v. :

                                                      :

JEROME JOHNSON, :
                                                      :

                 Appellant. : No. 2047 EDA 2018

Appeal from the Judgment of Sentence Entered, May 11, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0005331-2014,
CP-51-CR-0005332-2014, CP-51-CR-0009453-2014,
CP-51-CR-0012063-2015.

BEFORE: PANELLA, P.J., STABILE, J., DUBOW, J., KUNSELMAN, J., NICHOLS,
         J., MURRAY, J., McLAUGHLIN, J., KING, J., and McCAFFERY, J.

OPINION BY KUNSELMAN, J.:                      Filed: July 9, 2020

Jerome Johnson appeals from the judgment of sentence entered at four separate dockets after a consolidated jury trial. The jury found him guilty of second-degree murder, robbery, aggravated assault, and other related charges.

On June 5, 2018, Johnson timely filed four notices of appeal pursuant to the Supreme Court decision in **Commonwealth v. Walker,** 185 A.3d 969 (Pa. 2018), which requires appellants to file a separate notice of appeal for each trial-court docket number they intend to appeal. However, Johnson listed all four of the docket numbers on all four notices. He also italicized one relevant docket number on each notice to identify which notice corresponded with each appealed case.

While his four consolidated appeals were pending, a three-judge panel of this Court filed a published opinion in **Commonwealth v. Creese**, 216 A.3d 1142 (Pa. Super. 2019). That panel construed **Walker** to mean that "we may not accept a notice of appeal listing multiple docket numbers, even if those notices are included in the records of each case." **Creese**, 216 A.3d at 1144. Instead, the panel concluded "a notice of appeal may contain **only one** docket number." **Id.** (emphasis added). The panel quashed the appeal. Neither party filed a petition for allowance of appeal with the Supreme Court, rendering **Creese** a final disposition and setting precedent by this Court.

Thereafter, the panel originally assigned to Johnson's case requested *en banc* certification to determine whether Johnson adequately preserved his

appeal.[1]   We conclude that Johnson may proceed with his appeal, but we affirm his judgment of sentence.

I.

This Court granted *en banc* consideration of the following procedural issues:

> 1.    Whether Johnson's inclusion of multiple court of common pleas docket numbers on his notice of appeal violates Pa.R.A.P. 341 and ***Walker***?
>
> 2.    If so, whether such violation necessitates quashal by this Court?

Per Curiam Order, 10/4/19, at 3.

To answer these questions, we begin by examining the ***Walker*** decision. There, the trial judge granted suppression motions filed by four codefendants, and the Commonwealth filed a ***single*** notice of appeal.   This Court quashed the appeal based on our interpretation of the Official Note to Appellate Rule 341.   ***Walker,*** 2016 WL 5845208 (Pa. Super. 2016).  That Note provides in relevant part as follows:

> Where, however, one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed. ***Commonwealth v. C.M.K.***, 932 A.2d 111, 113, & n.3 (Pa. Super. 2007) (quashing appeal taken by a single notice of appeal from order on remand for consideration under Pa.R.Crim.P. 607 of two persons' judgment of sentence).

---

[1] A panel in another case facing a similar procedural issue also requested *en banc* review. ***See Commonwealth v. Larkin***, \_\_\_ A.3d \_\_\_, 2761 EDA 2018 (Pa. Super. 2020) (*en banc*).  Both cases were listed consecutively before this *en banc* panel, and we decide them both today.

Pa.R.A.P. 341, Official Note.

The Commonwealth argued that factual circumstances of Walker's case were distinguishable from the case cited in the note to Rule 341, *C.M.K.*, because *C.M.K.* involved a single appeal filed by two criminal defendants, based upon two judgments of sentence, for convictions on different charges with different sentences. Under the circumstances of *C.M.K.*, this Court held quashal was necessary, because the two codefendants, who were husband and wife, each presented different issues. We stated:

> From a purely logical standpoint, the problems inherent in criminal codefendants filing a joint appeal are readily apparent. In most cases, they would not have been convicted for identical actions. If, then, these codefendants raised a challenge to the sufficiency of the evidence, as [a]ppellants here do, the evidence under evaluation would be different for each defendant, necessitating individualized arguments and analyses. The same would be true for challenges to different sentences.
>
> Some appellate issues may coincide; for instance, in this case, [a]ppellants challenge *ex parte* contact between the prosecutor and a juror. The potential for prejudice from such contact would appear to be the same for each defendant. However, even this claim may not be treated by this Court in exactly the same fashion. Appellants were individually represented at trial; accordingly, the issue may have been preserved at trial by one defendant's counsel and not the other's.[2]

*C.M.K.*, 932 A.2d at 113 (footnote omitted).

---

[2] Because they were married to each other, the appellants in ***Commonwealth v. C.M.K.***, 932 A.2d 111 (Pa. Super. 2007), filed one joint brief which contained only joint arguments; the Court found this distinction irrelevant. *C.M.K.*, 932 A.2d at 113.

In *Walker*, the Commonwealth argued against quashal, because, unlike *C.M.K.*, the appeal stemmed from a single suppression order that applied equally to all of the appellees, with a single set of findings of fact and conclusions of law, relating to a single vehicle stop.

This Court disagreed, indicating that although the specific problems produced by a single order differed in *C.M.K.*, the Commonwealth's single appeal in *Walker* generated a different set of issues:

> For instance, affirming (or reversing) the suppression order may affect each defendant differently, depending on what evidence, if any, is still available for use by the Commonwealth at trial. Indeed, the results of such an appeal may ultimately affect circumstances which impact whether the codefendants should be jointly tried at all. Moreover, the Fourth Amendment and/or privacy rights of [a]ppellees, as well as their standing to challenge the lawfulness of a search and/or seizure, could also differ between codefendants. Accordingly, although we agree that the specific concerns discussed in *C.M.K.* cannot arise in a Commonwealth's appeal from a suppression order affecting multiple codefendants, sufficiently similar or analogous hazards exist to justify the rule requiring the Commonwealth to file separate appeals with respect to each [a]ppellee/codefendant.

*Walker,* 2016 WL 5845208 at *3 (Pa. Super. 2016). For these reasons, this Court held that the Commonwealth was required to file four separate notices of appeal, and that we lacked "the authority to manufacture a remedy for the Commonwealth, even if we were inclined to do so." *Id.* As a result, we quashed the Commonwealth's appeal. *Id.* at *4.

The Supreme Court granted further review and agreed with our analysis. **Walker**, 185 A.3d at 976. The High Court also explained that the Commonwealth's filing of a **single** notice of appeal "effectively and improperly consolidated the appeals in the [criminal defendants'] four cases . . . without either the approval of the Superior Court or the agreement of the [parties]." **Id.** at 976 (citing Pa.R.A.P. 513).[3] The Supreme Court expressed concern that a failure to require separate notices of appeal "will often result in unintended consequences, as the appellate court, in deciding the single appeal must 'go behind' the notice of appeal to determine if the same facts and issues apply to all of the [criminal defendants.]" **Id.** at 977.

Applying the rules of statutory construction, the High Court found that the 2013 amendment to the Official Comment of Rule 341(a) required a bright-line rule: "Where . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed." **Id.** "Failure to do so, requires the appellate court to quash the appeal." **Id.** at 977.

_____

[3] Pa.R.A.P. 513 states:

> [w]here there is more than one appeal from the same order, or where the same question is involved in two or more appeals in different cases, the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal. Appeals may be consolidated by stipulation of the parties to the several appeals.

However, because its interpretation of the Rule 341 was based on the 2013 amendment to the Official Note which was contrary to decades of case law from our appellate courts, the Supreme Court declined to quash Walker's appeal and made the rule prospective only, *i.e.*, to cases filed after June 1, 2018. *Id.* at 977.

Notably, **Walker** did not specifically address the situation in this case, where one defendant appeals from one judgment of sentence, entered following one trial on multiple criminal dockets. In this circumstance, the problems identified in **C.M.K.** and **Walker** involving multiple defendants do not exist. Nonetheless, where a single defendant challenges his sentence relating to "more than one docket," **Walker** requires that defendant to file separate notices of appeal. *Id.* at 976.

Six months after **Walker**, on December 20, 2018, Lawrence Creese appealed from the PCRA court's order, denying him post-conviction relief at four separate docket numbers. **Creese**, 216 A.3d at 1143. Creese filed a single notice of appeal listing all four docket numbers. *Id.*

This Court entered a rule to show cause for Creese to explain why we should not quash the appeal based on **Walker**, 185 A.3d. 969 (Pa. 2018). *Id.* Creese filed a response in which he admitted to filing only one notice that included all four docket numbers and conceded that "counsel was previously unaware of the rule in [**Walker**]." *Id.* However, he claimed that no party

would be prejudiced by "this technical error." *Id.* In a *per curiam* order, this Court referred the *Walker* issue to the merits panel.

Under these facts, the majority of the panel concluded that Creese did not satisfy *Walker*.[4] *Id.* at 1144. The Court noted that, because Creese's counsel was previously unaware of the *Walker* rule, "it appear[ed] that one notice of appeal was simply photocopied and placed in each record, conceivably by the clerk of courts. It [was] impossible to be sure whether that occurred, or whether counsel himself filed four copies of the notice of appeal." *Id.* at 1144, n.1.[5] The *Creese* majority then read *Walker* "as instructing that we may not accept a notice of appeal listing multiple docket numbers, even if those notices were included in the records of each case." *Id.* Moreover, as previously mentioned, *Creese* held that "a notice of appeal may contain only one docket number." *Id.*[6]

---

[4] *Commonwealth v. Creese*, 216 A.3d 1142 (Pa. Super. 2019) was a divided decision, with Judge Strassburger dissenting. He believed Creese had met the mandates of Pa.R.A.P. 341 and *Commonwealth v. Walker,* 185 A.3d 969 (Pa. 2018), and, therefore, Judge Strassburger would not have quashed the appeal. *Creese*, 216 A.3d at 1146

[5] As the *Creese* panel correctly noted, a clerk of courts has only ministerial powers. *Creese,* 216 A.3d 1144, n.2. The clerk "has no judicial powers *nor does he have the power to act as attorney for others* by virtue of his office." *Id.* (emphasis in original). We agree that the clerk of courts cannot perfect an appeal at multiple dockets when a lawyer fails to file separate notices.

[6] In his dissent, Judge Strassburger opined, "Nothing in *Walker* requires a notice of appeal to contain only one docket number." *Creese*, 216 A.3d. at 1146.

The **Creese** panel recognized the severity of applying such a rule to any appeal filed after June 1, 2018. **Id.** However, this rule, it reasoned, would provide consistency, and "would ultimately benefit appellants and counsel by providing clear guidance on how to satisfy **Walker** and Rule 341(a)." **Id.**

Significantly, the **Creese** decision immediately affected numerous cases already pending on appeal, including the instant case, where the facts were significantly different. **Creese** placed many appellants, who believed they had complied with **Walker**, in unforeseen jeopardy of forfeiting their appeals, because **Creese**, unlike **Walker**, did not apply its rule prospectively.

Here, for example, Johnson clearly filed 4 separate notices of appeal, as **Walker** directed. Although the notices contained all four of the docket numbers from the lower court, on each notice, he italicized the relevant case number being appealed. As we did in **Creese**, this Court issued a rule to show cause why this appeal should not be quashed pursuant to **Walker**. Johnson filed a response, stating that he filed four separate notices of appeal, and although the notices had all four case numbers on it, the relevant docket number, at which the notice was filed, was italicized. This Court entered a *per curiam* order, referring the **Walker** issue to the merits panel.

As noted, because Johnson's appeal was pending when **Creese** was decided, and because **Creese** would require quashal of this appeal and many others, we granted *en banc* review to decide whether **Walker** and Rule 341 dictate that only one number may appear on a notice of appeal.

In their supplemental briefs to this Court, both Johnson and the Commonwealth contend that we should *not* quash Johnson's four notices of appeal. Both parties assert that he complied with the explicit requirements of Appellate Rule 341 and *Walker*.[7] We agree.

Importantly, we observe that Rule 341 and *Walker* make no mention of case numbers on a notice of appeal. To be sure, the error in *Walker* was the filing of a *single* notice of appeal affecting multiple cases and several defendants. The bright-line rule set forth in *Walker* only required an appellant to file a *"separate"* notice of appeal for each lower court docket the appellant was challenging.

Here, it is indisputable that Johnson filed a separate notice of appeal for each of the four dockets below, because he italicized only one case number on each notice of appeal. Unlike *Creese*, the clerk of courts played no role in typing four separate notices of appeal and italicizing the individual docket numbers on Johnson's behalf. Based on our review of *Walker* and Rule 341, Johnson filed separate notices that perfected four appeals from each of the four common pleas court dockets. The fact that the notices contained all four lower court numbers is of no consequence. Indeed, the Rules of Appellate

---

[7] Johnson also argues that even if he violated Rule 341 and *Walker*, the appeal should not be quashed due to a breakdown in the court system, because the trial court incorrectly informed Johnson that he could file "**an** appeal" to the Superior court after sentencing. Johnson's Supplemental Brief at 27-30. As our decision today in *Larkin*, *supra*, makes clear, this alternative argument likewise dictates against quashal of Johnson's appeals.

Procedure are to be liberally construed to effectuate justice. Pa.R.A.P. 105(a); *see also* 1 Pa.C.S.A. § 1928(c). We should not invalidate an otherwise timely appeal based on the inclusion of multiple docket numbers, a practice that the Rules themselves do not expressly forbid.

By stating that each notice of appeal may contain only one number, *Creese* imposed upon appellants an additional requirement found in neither *Walker* nor Rule 341. Although our Supreme Court may adopt such a rule in the future, it did not do so in *Walker*.[8] As such, in so far as *Creese* stated "a notice of appeal may contain *only one* docket number," 216 A.3d at 1144 (emphasis added), that pronouncement is overruled.[9] Because Johnson appealed from four docket numbers and filed four notices of appeal, Johnson has complied with *Walker*. The fact that each notice of appeal listed all four docket numbers does not invalidate his notices of appeal, and we decline to quash his appeals.

---

[8] We respectfully suggest that any such rule be prospective and require an appellant to identify any related cases as well; identifying related cases alerts the appellate court to assign those appeals to the same merits panel, which fosters judicial economy, ensures uniform treatment for the appellant, and limits the possibility of inconsistent results.

[9] As Creese's attorney admitted to only filing one notice of appeal in violation of *Walker*, and the clerk, we agree with the ultimate decision in *Creese* to quash that appeal.

II.

Turning to the merits of this case, we note that Johnson's convictions for second degree murder, robbery and related offenses arose out of two incidents, which occurred one day apart in January 2014. The first case arose from a robbery and murder at the New Diamond Chinese Store. On January 26, 2014, Marquise Kemp and Kyleaf Gordon were selling drugs out of the store. Johnson and his two co-conspirators, Shafik Lamback and Mychal Cassel, went to the store looking for drugs. Johnson pointed a gun at Kemp, said "Don't move or I'm going to kill you", and demanded Kemp give him everything. Kemp gave him his black Armani Exchange "bubble" jacket, which had money, drugs, and a phone in it. Kemp followed the three robbers out of the store and yelled to Gordon, who was across the street, "They robbed me." Gordon started shooting at the men; Cassel fired back, hitting Gordon. Kemp and Gordon ran, but Gordon, who was bleeding from his nose and mouth, fell to the ground. Kemp called the police. Kemp's robbers sped off, and later they divided up the proceeds from the robbery. Gordon laid in the street and died shortly thereafter.

Johnson's three other cases arose from another robbery at the Norman Blumberg Apartments. On January 27, 2014, the day after the Chinese Store robbery and murder, Johnson, Lamback, and Cassel went to the Norman Blumberg Apartments looking for pills. Johnson and Cassel carried the same

firearms that they had with them the night before. Failing to find any pills, Lamback left, but Johnson and Cassel stayed at the apartment building.

Derek Fernandes was leaving the apartment building when he saw the two unfamiliar men. Johnson pulled out a gun, pointed it at Fernandes' face, and said "Don't move." Johnson grabbed twenty dollars that Fernandes was holding in his hand. As Johnson and Cassel left the building, Johnson warned Fernandes not to follow them or he would shoot.

Fernandes followed them out of the building; shots were fired. Fernandes told two housing police officers that he was robbed. The officers saw Johnson and Cassel walking away, told them to stop, but they took off. The police chased them on foot for several blocks. An FBI agent joined the chase in his vehicle. Eventually, the three officers trapped Johnson in a fenced-in lot. The officers directed Johnson to drop his weapon, but he refused. Instead, Johnson raised his gun and pointed it directly at the officers. The officers shot at Johnson, and he fell to the ground. Johnson was arrested and charged.

Prior to trial, the Commonwealth filed a motion to consolidate the charges from the Chinese Store robbery and murder with the Fernandes robbery and assaults. Although Johnson opposed it, the trial court granted the motion.

A jury convicted Johnson of the aforementioned charges. The trial court imposed an aggregate sentence of life imprisonment without parole. Johnson filed post-sentence motions, which the trial court denied.

Johnson timely appealed. Both Johnson and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Johnson raises the following issues:

1. Did the Trial Court abuse its discretion in granting the Commonwealth's Motion to Consolidate Cases for Trial?

2. Did the Trial Court err in denying the Appellant's Post–Verdict Motions where the weight and sufficiency of the evidence did not support a verdict of guilty of Second-Degree Murder?

Johnson's Brief at 2-3.

In his first issue, Johnson argues that the trial court erred by consolidating for trial the charges stemming from the Chinese Store robbery/murder and the Fernandes robbery/assaults. Specifically, Johnson contends that the evidence of each offense would not have been admissible in separate trials. Additionally, the charges were based on two separate incidents occurring on different dates and at different times and locations. Johnson's Brief at 9, 11-13. According to Johnson, he was prejudiced by the consolidation of the cases. *Id.* at 13-15. We disagree.

"The general policy of the laws is to encourage joinder of offenses and consolidation of indictments when judicial economy can thereby be effected, especially when the result will be to avoid the expensive and time consuming duplication of evidence." ***Commonwealth v. Patterson***, 546 A.2d 596, 600

(Pa. 1988).   "Whether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to the defendant." ***Commonwealth v. Wholaver***, 989 A.2d 883, 898 (Pa. 2010).  The Rules of Criminal Procedure provide:

> Rule 582. Joinder—Trial of Separate Indictments or Informations
>
> **(A) Standards**
>
> (1) Offenses charged in separate indictments or informations may be tried together if:
>
>> (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
>>
>> (b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1)(a)-(b).

To establish that evidence of other crimes is admissible at trial, the evidence must be used for a purpose other than to show mere propensity to commit a crime.  Pa.R.E. 404(b)(1).  Rationales for the admission of other crimes or bad acts evidence include using this evidence to prove identity, intent, malice, absence of mistake or accident, common scheme or plan, and where the prior or subsequent act is part of the history of the event or part of the natural development of the facts.  ***Commonwealth v. Collins***, 703 A.2d 418, 422 (Pa. 1997).   Such evidence is only admissible upon a showing that its probative value outweighs its potential for prejudice. Pa.R.E. 404(b)(3).

Here, the trial court found that Johnson's multiple criminal charges were properly joined for trial. It explained as follows:

> Evidence of the robbery and murder from January 26, 2014 is clearly admissible in the trial for the robbery and aggravated assaults that occurred on January 27, 2014 and *vice versa* to demonstrate common plan and scheme, identity, knowledge, motive, intent, absence of mistake, to complete the narrative of events, and to show consciousness of guilt. The facts of the cases demonstrate sufficient similarity to warrant joinder to show the undertaking of a common plan and scheme. These criminal acts occurred on two consecutive nights in the same early morning hours; the same three defendants used the same vehicle to drive from West Philadelphia to North Philadelphia for the purpose of robbing a drug dealer of his narcotics and money. Johnson and Cassel carried the same firearms each night. The jacket stolen the first night was recovered from Johnson's person on the second night. Ballistic evidence from the first robbery and murder was located inside Johnson's vehicle after it was recovered outside the scene of the second robbery and shooting.
>
> The overlapping evidence, including the use of Johnson's white Lincoln Town Car in both robberies and the recovery of the proceeds from the first robbery on the night of the second robbery, is admissible to establish the identity of the doers in each case. Similarly, evidence of Johnson's conduct and use of a firearm in the first robbery is relevant and admissible to establish intent and malice during the second robbery and subsequent aggravated assaults. Finally, the short time frame and overlapping evidence of each criminal act is so intertwined as to be part of the *res gestae* of this case. As such, the evidence of each crime would properly be admissible in a trial for the others.
>
> The offenses charged for each case, while consisting of overlapping evidence, are sufficiently distinct in time, location, and action to be evaluated by a jury without confusion, as they occurred in different locations and had different victims. Likewise, [Johnson] is not overly prejudiced by the consolidation. "[T]he trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form a part of the history and natural development of the events and offenses for which the defendant is charged." ***Commonwealth v. Lark***, 543 A.2d 491,

- 17 -

> 501 (Pa. 1988). Prior acts are not prejudicial when they are necessary for the prosecution of a case. ***Commonwealth v. O'Brien***, 836 A.2d 966, 971 (Pa. Super. 2003) (citing ***Commonwealth v. Gordon***, 673 A.2d 866 (Pa. 1996). The cases were therefore properly consolidated.

Trial Court Opinion, 8/6/18, at 11-13. Given this rationale, we conclude that the trial court did not abuse its discretion in consolidating the charges for trial and that Johnson was not prejudiced and did not suffer clear injustice as a result of the consolidation. Johnson's first issue warrants no relief.

In his second issue, Johnson raises a sufficiency and weight claim as to his conviction for second-degree murder. We note, however, that although Johnson preserved this issue for appeal, he did not develop any argument regarding the weight claim in his appellate brief. We have stated:

> When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. Citations to authorities must articulate the principles for which they are cited.
>
> This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.

***Commonwealth v. Kane***, 10 A.3d 327, 331 (Pa. Super. 2010) (citations omitted). Accordingly, because he failed to develop an argument, Johnson has waived his weight claim. Therefore, we will only address his sufficiency claim.

Johnson argues that there was insufficient evidence to support his conviction for second-degree murder. Specifically, Johnson argues that when he, Cassel, and Lamback left the Chinese Store, the robbery and conspiracy to rob Kemp had ended. The shooting death of Gordon occurred independent from the robbery. The men had already left the Chinese Store when Gordon shot at Cassell, and Cassell returned fire in an act of self-defense. Thus, Johnson claims the evidence presented at trial was insufficient as a matter of law to convict him of second-degree murder. Johnson's Brief at 19-20. We disagree.

In reviewing a claim based upon the sufficiency of the evidence, this Court:

> must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011) (citations omitted). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013).

A defendant commits second-degree murder when he or an accomplice kills another human being during the course of committing a felony. 18 Pa.C.S.A. §§ 2501, 2502(b), (d). To sustain a conviction for second-degree

murder, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the defendant or an accomplice, while partners in a crime, committed the act that caused the killing; (3) the defendant or an accomplice committed the act in furtherance of that crime, and (4) that the defendant acted with malice. *Id*.

Here, the Commonwealth's evidence showed that Gordon was killed while Johnson and his accomplices were committing a robbery. Even though the men left Kemp's store, the shooting occurred while they were attempting to flee from the scene. As the trial court stated:

> The evidence clearly established that on January 26, 2014, Johnson, Cassel, and Lamback drove to North Philadelphia with the intent of robbing a drug dealer. Johnson and Cassel brought guns. Johnson immediately asked Kemp if he had any drugs, before pulling out his gun and pointing it at Kemp. Cassel boxed Kemp in while Lamback stood at the door as a lookout. While trying to flee from the robbery and confronted by Kyleaf Gordon, Cassel pulled out his firearm and shot at Gordon, ultimately shooting him in the back as he ran away. Both Johnson and Cassel were unlicensed to carry a firearm. All three defendants received proceeds from the robbery.

> Johnson conceded that he robbed Kemp. [Johnson] asserts, however, that he acted alone in the robbery and that co-defendant Cassel acted alone in self-defense. This claim necessarily rests on the premise that the Commonwealth's evidence did not prove Cassel's involvement in the robbery and the conspiracy among the defendants to commit robbery. The jury, sitting as fact-finder, did not find the [d]efendants' arguments persuasive and convicted both Johnson and Cassel of both robbery and conspiracy to commit robbery.

> Since Second-Degree Murder is predicated on the underlying felony, this Court will address the evidence proving that each defendant was involved in the robbery and conspiracy to commit robbery of Kemp. Johnson, Cassel, and Lamback left their own

neighborhood with guns to find drug dealers. They drove together to an area of the city where they were unfamiliar. All three exited the Lincoln Town Car and entered the Chinese Store, surrounding Kemp and preventing his escape and surveying for law enforcement or other potential threats to their enterprise. After the money, drugs, phone, and jacket were confiscated from Kemp at gunpoint, all three left the store together and returned to Johnson's vehicle. After shots were exchanged and all three returned back to West Philadelphia together, the proceeds were divided equally among the perpetrators. The evidence is more than sufficient to establish all three defendants were guilty of Robbery and Conspiracy to Commit Robbery.

Johnson, Cassel, and Lamback were therefore conspirators, or partners, at the time they were leaving the Chinese Store and encountered Gordon. Cassel, acting as a co-conspirator, fired his weapon in an attempt to successfully flee from the scene of the robbery, an act that furthered the robbery and the conspiracy. Since the defendants were involved in a crime that by its nature risks the safety of others, the jury could infer malice. Gordon suffered a fatal gunshot wound as a result of Cassel's actions. The evidence is therefore sufficient to sustain a verdict of Second-Degree Murder.

Trial Court Opinion, 9/6/18, at 14-15.

Additionally, the Commonwealth proved that Johnson's accomplice, Cassel, did not act in self-defense. As the trial court explained:

The jurors dismissed the claims that Cassel acted in self-defense. Self-defense, which the [Johnson] argues justified Cassel's actions, is defined as the use of force upon another person when the actor believes that such force is immediately necessary for the purpose of protecting himself against unlawful force. 18 Pa.C.S. §505(a). The use of a deadly force is limited by § 505(b)(2), under the circumstances where "the actor believed such force is necessary to protect himself against death or serious bodily injury." 18 Pa.C.S. §505(b)(2). Deadly force is defined as, "force which, under the circumstances in which it is used, is readily capable of causing death or serious bodily injury." 18 Pa.C.S. §501.

> Under the law, the Commonwealth must prove beyond reasonable doubt that a killing was not committed in self-defense. ***Commonwealth v. Mouzon***, 53 A.3d 527 (Pa. 2012). It succeeds in the task if it's [sic] evidence shows that the defendant provoked or continued in the difficulty that resulted in the killing, the defendant's belief that he was in danger of death or serious bodily injury was unreasonable, or that the defendant could have retreated in complete safety. ***Id.*** at 532. As the defendants here provoked the use of force against them by robbing Kemp at gunpoint, self-defense was inapplicable.

***Id***. at 15-16.

Based upon our independent review of the record, and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we likewise find that there was sufficient evidence to prove beyond a reasonable doubt that Johnson committed second-degree murder. Contrary to Johnson's argument, the robbery and the murder were all one continuous event. The shooting clearly was prompted by Kemp telling Gordon that he had been robbed as Johnson and his co-conspirators attempted to leave the scene. The gunfire that ensued led to the murder of Gordon. Johnson's second issue also warrants no relief.

Judgment of sentence affirmed.

President Judge Panella, and Judges Dubow, Nichols, McLaughlin, King, and McCaffery join this Opinion.

Judge Stabile files a Concurring Statement, in which Judges Dubow, King, and McCaffery join.

Judge Murray Notes Dissent.

- 22 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/9/20