J-S02003-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALONZO SHEDRICK | : | |
| | : | |
| Appellant | : | No. 200 EDA 2025 |

Appeal from the Judgment of Sentence Entered December 6, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005176-2023

BEFORE: NICHOLS, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY NICHOLS, J.: **FILED MAY 13, 2026**

Appellant Alonzo Shedrick appeals from the judgment of sentence imposed after he was convicted of attempted murder, aggravated assault, firearms not to be carried without a license, carrying a firearm on the public streets in Philadelphia, possession of an instrument of crime (PIC), simple assault, and recklessly endangering another person (REAP)[1] following a non-jury trial. On appeal, Appellant contends that the trial court erred by admitting the preliminary hearing testimony of the complaining witness at trial. After review, we affirm.

The trial court set forth the facts of the case as follows:

At trial, the Commonwealth first presented the testimony of the complainant, Bobbi Walker [(the Victim)].[FN8] [The Victim] testified at the preliminary hearing that on May 18, 2023, she and

_____

[1] 18 Pa.C.S. §§ 901(a), 2702(a)(1), 6106(a)(1), 6108, 907(a), 2701(a), and 2705, respectively.

[Appellant] were smoking crack cocaine at her friend Gigi's apartment on the 400 block of South 48th Street in Philadelphia. [The Victim] had known [Appellant] for three days, during which time they had sex together. On the above date, [the Victim] started to perform oral sex on [Appellant] but had to stop because he "smelled like poop." She told him, "I can't be doing anything with you while you are smelling like this," and asked him if he wanted to take a shower. [Appellant] took a shower and returned to the living room area of the apartment, where [the Victim] was sitting on the couch "smoking crack." Apparently upset by this, [Appellant] retrieved a silver handgun from his jacket pocket and began walking around the apartment, wielding the gun. [Appellant] then struck [the Victim] in the head with the gun and ordered her to [perform oral sex on him]. [The Victim] complied with [Appellant's] demand because she "was scared because he had the gun in his hand."

FN8 Prior to trial, [the Victim] passed away due to unrelated causes. Accordingly, the parties litigated a motion to introduce [the Victim's] preliminary hearing testimony as substantive evidence. The Honorable Charles Ehrlich granted the motion on August 15, 2024. [The Victim's] testimony was read into the record by the respective parties and the court as though she were testifying at trial.

[The Victim] testified that, after [performing oral sex on Appellant] for a few minutes, she pulled away because she "didn't want to suck it no more . . . it didn't feel right." [Appellant] then started "grumbling," and moments later, he fired his gun at [the Victim], striking her repeatedly. [The Victim] testified that she saw the sparks from the gun and heard it go "pap, pap, pap, pap, pap." [Appellant] shot [the Victim] in the chest, stomach and thigh. She then saw [Appellant] run out the door and down the hall before returning to the apartment and shooting her additional times. [Appellant] then ran out "for good." [The Victim] dialed 911 but "couldn't finish" the call. Fortunately, she was on the call long enough to report that she had been shot and was able to provide the address.FN9

FN9 The parties also stipulated to the introduction of [the Victim's] recorded video statement to detectives, which was played at trial.

Philadelphia Police Officer Brandon Sweeney testified next for the Commonwealth. Officer Sweeney testified that, on May 18, 2023,

at approximately 7:00 p.m., he responded to a call for a shooting at an apartment on the 400 block of South 48th Street. Upon arriving at the apartment complex, he proceeded to the reported address of Apartment 1B. There, he encountered [the Victim] "laying on the couch covered in blood [with] multiple shell casings on the ground." Officer Sweeney was presented at trial with a still image from his body-worn camera video, which depicted the above scene. Officer Sweeney noted that [the Victim] had been shot two times in the left chest, two times in the left abdomen, two times in the left groin, and two times to the right side of the chest. Rather than wait for an ambulance, Officer Sweeney picked up [the Victim], carried her to his patrol car, and "got her to the hospital as fast as [he] could."

The Commonwealth next called Philadelphia Police Sergeant Louis Halegoua to the stand. Sergeant Halegoua testified that, on May 18, 2023, at approximately 7.25 p.m., he arrived at the 4800 block of Larchwood Street in response to a call for "unknown person in the backyard of a civilian's house." There, he and fellow officers encountered [Appellant], who was not wearing a shirt. Sergeant Halegoua noted that a few minutes earlier, there was a radio call for a shooting approximately two blocks from the scene of the backyard disturbance, with a flash description of "black male, shirtless."

Sergeant Halegoua also was presented with the body-worn camera video of Officer Messina, who was present at the backyard disturbance scene. The video, which was played at trial and submitted into evidence, depicted, *inter alia*, [Appellant] blurting out, "I didn't kill anybody." Sergeant Halegoua noted that, as depicted in the video, he and his fellow officers did not ask [Appellant] about anything other than "where his shoes were?"

Philadelphia Police Detective Michael Fahy testified next for the Commonwealth. Detective Fahy testified that, on May 18, 2023, he was assigned to investigate a shooting at the apartment complex the 400 block of South 48th Street. He and his partner, Detective Johnson, processed the scene, where they recovered nine .40 caliber fired cartridge casings and three live .40 caliber rounds. Detective Fahy photographed each of the ballistic items prior to securing them via property receipt. Additionally, he took photographs depicting various "strike marks" at the scene, including those from two bullets that went through the couch and into the wall. His partner also compiled a crime sketch, depicting the relative positioning of all the evidence at the scene.

- 3 -

Detective Fahy testified that there were only two ways out of the apartment at issue: through the front door (which took you through the common area of the apartment complex) or through the bathroom window. After processing the scene, Detective Fahy recovered surveillance videos from the apartment complex taken on the day of the shooting. One of the videos showed a black male wearing no shirt or shoes exiting the front door of the apartment and running down the hall at 7:23 p.m. before going back into the apartment. A second video showed what appeared to be the same black male with no shirt or shoes exiting the bathroom window of the apartment at 7:24 p.m., before fleeing in the direction of Larchwood Street. Detective Fahy noted that [Appellant] was arrested shortly thereafter on Larchwood Street; he matched the flash description of the shooter, as well as the appearance of the male fleeing the apartment as depicted in the surveillance videos.

Prior to resting, the Commonwealth played several 911 calls pertinent to the above events. Additionally, the Commonwealth introduced a certificate of non-licensure, establishing that [Appellant] did not have a permit to carry a firearm on the date of the shooing. Finally, the Commonwealth introduced [the Victim's] medical records, which reflected that she was admitted to the hospital on May 23, 2023 and discharged on June 1, 2023. Her injuries included: a right pulmonary laceration; right posterior, eight through nine rib fractures; left-sided injury to her diaphragm; right-sided diaphragm repair; liver laceration; distal transverse colon injury; supra-renal inferior vena cava injury; two left thigh gunshot wounds; and right T8 and T9 transverse process vertebrae fractures. [The Victim] was treated for: gunshot wounds to the chest; abdomen; left and right flank; two to the groin; two to the breast; one to the left thigh; two to the right chest; a forehead contusion; and abdominal tenderness. She required surgery to repair her colon as well as one of the gunshots to her chest.

Trial Ct. Op., 3/17/25, at 2-6 (some formatting altered and citations omitted).

Appellant was arrested and charged with attempted murder, aggravated assault – attempts or causes serious bodily injury, firearms not to be carried without a license, carrying a firearm on the public streets in Philadelphia, PIC,

simple assault, REAP, rape, involuntary deviate sexual intercourse by forcible compulsion (IDSI), sexual assault, and possession of a firearm prohibited. *See* Criminal Information, 7/28/23.

On May 13, 2024, the Commonwealth filed a motion seeking to admit the preliminary hearing testimony of the Victim based on her unavailability due to her death from a drug overdose unrelated to the instant case. A hearing on the motion was held before the Honorable Charles Ehrlich on July 18, 2024, wherein Appellant contested the Commonwealth's motion arguing that he did not have a full and fair opportunity to cross examine the Victim at the preliminary hearing. The Commonwealth's motion was granted on August 15, 2024.

The case proceeded to a bench trial before the Honorable Donna Woelpper on October 7, 2024. At the conclusion of trial, the court found Appellant guilty of attempted murder, aggravated assault, firearms not to be carried without a license, carrying a firearm on the public streets in Philadelphia, PIC, simple assault, and REAP. On December 6, 2024, the trial court sentenced Appellant to an aggregate term of six to fifteen years incarceration followed by one year of probation.

Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issue for our review:

Whether the trial court erred and abused its discretion by permitting the preliminary hearing testimony of [the Victim] to be introduced into the Appellant's trial?

- 5 -

Appellant's Brief at vii.

Specifically, Appellant argues that the trial court erred by admitting the preliminary hearing testimony of the Victim because he did not have a meaningful opportunity to cross examine the Victim at the preliminary hearing. *See id.* at 7. Appellant claims that he did not have a meaningful opportunity to cross examine the Victim because, when his attorney attempted to ask her questions regarding the sexual assault, the municipal court judge presiding over the hearing sustained objections regarding counsel's questions. *See id.* Appellant contends that those questions were critical to undermining the Victim's credibility. *See id.* at 8-10. Appellant claims he was prejudiced by the trial court's admission of the preliminary hearing notes because he was prevented from exploring the Victim's credibility, the trial court was unable to observe the Victim's demeanor to assess credibility, and, since he was represented by different attorneys at the preliminary hearing and trial, "there was no real opportunity for counsel to confront [the Victim] and no continuity of representation to mitigate the confrontation problem."[2] *See id.*

This Court has previously explained the following:

_____

[2] Appellant argues that **Commonwealth v. Wholaver**, 989 A.2d 883, 904 (Pa. 2010) requires continuity of counsel between the preliminary hearing and trial to avoid a confrontation clause violation. *See* Appellant's Brief at 9-10. However, **Wholaver** simply stated that continuity of counsel lessens the danger of a confrontation clause violation when using preliminary hearing testimony as substantive evidence at trial. *See Wholaver*, 989 A.2d at 904.

Whether [an] Appellant's confrontation rights were violated is a question of law, thus our standard of review is *de novo* and our scope of review is plenary. **See** [**Commonwealth v. Brown**, 185 A.3d 316, 324 (Pa. 2018).]

"It is well-established . . . that the introduction of an unavailable witness's prior recorded testimony from a preliminary hearing is admissible at trial and will not offend the right of confrontation, provided the defendant had counsel and a full opportunity to cross-examine that witness at the hearing." **Commonwealth v. McCrae**, 832 A.2d 1026, 1035 (2003). Under the Pennsylvania Rules of Evidence, a witness is deemed unavailable if attendance at trial cannot be procured through reasonable means. Pa.R.E. 804(a)(5)(A).

With regard to the "full opportunity to cross-examine the witness at the prior proceeding," our Supreme Court has held that, "[w]hether prior testimony was given at trial or at any other proceeding where, as here, admission of that prior testimony is being sought as substantive evidence against the accused, we conclude that the standard to be applied is that of *full and fair opportunity* to cross-examine." **Commonwealth v. Bazemore**, 614 A.2d 684, 687 (1992) (emphasis in original). Where a defendant asserts that he did not have a full and fair opportunity to cross-examine the witness at the preliminary hearing, he must establish that he was deprived of "vital impeachment evidence" at or before the time of the preliminary hearing. **Commonwealth v. Leak**, 22 A.3d 1036, 1044-45 (Pa. Super. 2011). "The Commonwealth may not be deprived of its ability to present inculpatory evidence at trial merely because the defendant, despite having the opportunity to do so, did not cross-examine the witness at the preliminary hearing as extensively as he might have done at trial." **Id.** at 1045 (quotation omitted).

**Commonwealth v. Leaner**, 202 A.3d 749, 775 (Pa. Super. 2019) (some citations omitted).

Ultimately,

[w]here the defendant has had the opportunity to cross-examine a witness at a preliminary hearing, probing into areas such as bias and testing the veracity of the testimony, cross-examination, and thus confrontation, within the meaning of the Sixth Amendment

- 7 -

has been accomplished. This is particularly so in cases where . . . the defendant was represented by the same counsel at the preliminary hearing and at trial.

***Wholaver***, 989 A.2d at 904.

Initially, we note that Appellant concedes that the Victim was unavailable under Pa.R.E. 804(a)(4). ***See*** Appellant's Brief at 7.

Further, Appellant does not identify in his brief any vital impeachment material that he was deprived of at or before the preliminary hearing. ***See id.*** at 5-16; ***see also Leak***, 22 A.3d at 1044-45. Instead, Appellant contends that he was prevented from developing an "entire impeachment theory" because of two sustained objections at the preliminary hearing.[3] ***See***

_____

[3] Appellant compares his claim to ***Smith v. Illinois***, 390 U.S. 129 (1968) and ***Delaware v. Van Arsdall***, 475 U.S. 673 (1968) stating that forbidding a defendant from inquiring about credibility violates the confrontation clause. ***See*** Appellant's Brief at 8, 10.

However, ***Smith*** dealt with a witness who admitted he provided a false name at trial and, when defense counsel asked his real name and where he lived, the trial court sustained an objection and excluded the testimony. ***See Smith***, 390 U.S. at 130. The ***Smith*** Court found a confrontation clause violation because "the petitioner was denied the right to ask the principal prosecution witness either his name or where he lived, although the witness admitted that the name he had first given was false." ***See id.*** at 131. The Court reasoned that such a denial of "this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." ***See id.***

In ***Van Arsdall***, the United States Supreme Court found a confrontation clause violation where "the trial court prohibited *all* inquiry into the possibility that [the witness] would be biased as a result of the State's dismissal of his pending public drunkenness charge." ***Van Arsdall***, 475 U.S. at 679 (emphasis in original). The Court concluded that the confrontation clause was violated because the trial court completely barred inquiry about the dismissal of the charge, which the State conceded had occurred, and "that a jury might
*(Footnote Continued Next Page)*

Appellant's Brief at 10.  Specifically, the objections occurred as preliminary hearing counsel asked the Victim about the consensual sexual encounter she had with Appellant before the incident began.  **See** N.T., 7/21/23, at 17-18.[4] The relevant exchange is as follows:

> [Preliminary Hearing Counsel]: It's safe for me to assume that [Appellant] didn't ejaculate at that time; is that correct?
>
> [Prosecutor]: Objection.
>
> The court: I'm going to sustain the objection.  You don't have to answer.
>
> [Preliminary Hearing Counsel]: Ma'am, there is no condom used; is that correct?
>
> [Prosecutor]: Objection.
>
> The court: I'm going to sustain the objection.  You don't have to answer.

**Id.** (some formatting altered).

Appellant argues that "inquires into physical corroboration in assault cases [such as questions] concerning condom use, ejaculation, or rape kit findings . . . go to the very heart of credibility."  Appellant's Brief at 7-8 (citations omitted).

_____

reasonably have found [that the dismissed charge] furnished the witness a motive for favoring the prosecution in his testimony." **See id.** We find these cases distinguishable from the case at issue here where Appellant was simply barred from developing one speculative impeachment theory.

[4] We note that the preliminary hearing testimony was read into the record and admitted as an exhibit at trial. **See** N.T., 10/7/24, at 9-37; Commonwealth Exhibit C-19 (Preliminary Hearing Testimony from July 21, 2023).  For clarity, we cite directly to the notes of testimony as they appear in the Commonwealth's exhibit.

However, despite Appellant's claim that he was prevented from developing an impeachment theory based on these sustained objections, the record reflects that preliminary hearing counsel developed multiple theories attacking Appellant's credibility during the cross-examination of the Victim. Specifically, preliminary hearing counsel questioned the Victim about her previous consensual sexual relations with Appellant, her drug use throughout the day and in the days leading up to the incident, the presence of others at the apartment where the incident occurred, and her memory of the events given her admission of drug use before the incident occurred. *See* N.T., 7/21/23, at 16-32. Further, when preliminary hearing counsel noticed a discrepancy between the Victim's testimony on direct and cross-examination, the preliminary hearing court allowed counsel to clarify the Victim's testimony over the Commonwealth's objection. *See id.* at 30-31.

Accordingly, the record reflects that the cross-examination at the preliminary hearing explored the Victim's veracity and inconsistency. *See Wholaver*, 989 A.2d at 904. In fact, Appellant's theory of the case at trial largely reflected the inquiries made at the preliminary hearing including the lack of forensic evidence of the sexual assault, the presence of other individuals in the home, the Victim's ability to remember the events given her admission of drug use, and discrepancies between Appellant's preliminary hearing testimony and her statement to police. *See* N.T., 10/7/24, at 80-88. While Appellant identifies another additional potential avenue for impeachment, his confrontation clause rights were not violated simply

because he would have cross examined the Victim more extensively at trial. *See Leak*, 22 A.3d at 1045; *see also Commonwealth v. Grush*, 295 A.3d 247, 256 (Pa. Super. 2023) (recognizing that a full and fair opportunity for cross-examination "does not demand a total and comprehensive cross-examination" and that "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish" (citation omitted and emphasis in original)).

Accordingly, because the record reflects that Appellant had a full and fair opportunity to cross-examine the Victim at the preliminary hearing, the trial court did not err in admitting the preliminary hearing testimony as substantive evidence due to the Victim's unavailability at trial. *See Leaner*, 202 A.3d at 775. No relief is due.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/13/2026